590    SUPREME COURT OF WISCONSIN,

Hurlbut vs. Marshall, imp.    Hurlbut vs. Kelly, imp.

## HURLBUT vs. MARSHALL, imp.
## HURLBUT vs. KELLY, imp.

*March 5 — March 31, 1885.*

*(1) Appeal to S. C.: Order striking out demurrer. (2) Action against insolvent banking corporation: Parties: Joinder of causes of action. (3) Directors of corporation.*

1. An order striking out as frivolous a demurrer to the complaint and permitting the defendant to answer on the usual terms, will not be reversed unless the demurrer was well taken.

2. A creditor of an insolvent banking corporation may bring an action under secs. 3218–3226, R. S. on behalf of all creditors, for the purpose of closing up the business of the bank and to enforce the respective liabilities of the officers, directors, and stockholders of the corporation, including not only the liabilities specially created by statute but also the liabilities arising at common law for misappropriation and embezzlement of funds, for negligence in permitting the same, and the liability to repay dividends unlawfully declared and received; and it is immaterial that the plaintiff was not a creditor of the corporation when such unlawful dividends were declared.

3. The power to have a board of directors is inherent in all private corporations.

APPEALS from the Circuit Court for *Brown* County.

The substance of the complaint is sufficiently stated in the opinion. The defendant *L. M. Marshall* demurred thereto on the grounds: (1) that the court has no jurisdiction of the subject of the action; (2) that the plaintiff has not legal capacity to sue; (3) that there is a defect of parties defendant; (4) that several causes of action have been improperly united; (5) that the complaint does not state facts sufficient to constitute a cause of action. The demurrer specified for particular defect under the fourth head, "that the plaintiff has obtained no leave or authority of court and there is no law that will allow or permit him to bring an action to compel stockholders to pay a statutory debt, with an action for general creditors to wind up the affairs of an insolvent cor-

poration, or to hold directors or officers of a corporation liable for negligence; and specified, under the third head, "that the defect of parties defendant consists in joining in this action and in said complaint Strong's Bank of Green Bay with Henry Strong, *D. M. Kelly*, M. P. Skeels, and Louis Neese, as officers and directors of said corporation, called Strong's Bank, and, also with Ann Colburn, to compel return of dividends; and with M. B. Franks, J. C. White, Joseph Tayler, A. N. Marshall, J. E. Dean, Sarah Hayes, Sidney Crawford, M. T. Hale, L. B. Skeels, M. C. Underwood, Rowena Morris, and A. H. Ellsworth, as stockholders of said Strong's Bank, and also to compel return of dividends received by each of the same."

The defendant *D. M. Kelly* demurred to the complaint on the grounds: 1. That several causes of action have been improperly united, to wit: *(a)* A cause of action against Strong's Bank of Green Bay, aforesaid, for the collection of a debt due upon contract. *(b)* An action against this defendant to recover an amount equal to the amount of capital stock of said bank, alleged to have been and now to be owned by this defendant, or an amount equaling the difference between the par value of stock of said bank, alleged to have been held by this defendant and the amount paid by this defendant therefor. *(c)* An action based upon an alleged liability of this defendant for negligence in his action while holding the office of director of said bank. 2. That said complaint does not state facts sufficient to constitute a cause of action.

Each of said demurrers was overruled and stricken out, with leave to answer, and from the respective orders entered in that behalf the said defendants, *Marshall* and *Kelly*, appealed.

For the appellant *Marshall* there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd*.

For the appellant *Kelly* there was a brief by *Tracy & Wheeler*, and oral argument by *Mr. Tracy*.

For the respondent there were briefs by *Ellis, Greene & Merrill*, and oral argument by *Mr. Greene*. They argued, among other things:

1. The complaint is not bad for insufficiency. The demurrer being to the whole complaint, if it states any cause of action the demurrer must fail. *Curtis v. Moore*, 15 Wis. 134; *Roberts v. Johannas*, 41 id. 616; *Moritz v. Splitt*, 55 id. 441; *Bronson v. Markey*, 53 id. 98. The appellants are certainly liable as stockholders for the amount of their stock, and for their unpaid subscriptions. R. S. p. 607, sec. 47; R. S. sec. 3226; *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57; *Coleman v. White*, 14 id. 700; *Cleveland v. Marine Bank*, 17 id. 545. The only claim of insufficiency is that no cause of action is stated against the directors for negligence and for paying or receiving illegal dividends. Conceding this, the general demurrer must still fail, because other valid claims against the appellants *are* stated.

2. There is no misjoinder of causes of action. The specification of misjoinder is, in substance: (1) That leave of court was not obtained to bring the action; (2) That several causes of action are improperly united, to wit: *(a)* a cause of action against the bank to collect a debt due on contract; *(b)* one against appellant to recover the amount of his capital stock or unpaid subscription; *(c)* one against appellant for negligence as a director; *(d)* one to wind up the affairs of an insolvent corporation. What the failure to get leave to sue has to do with the objection of misjoinder is hard to understand. However, leave to sue is not necessary. Secs. 3218–3226, R. S. If it was, the objection could only be taken by *motion* — not by demurrer. *Finch v. Carpenter*, 5 Abb. Pr. 225; *Lane v. Salter*, 4 Robt. 239; 1 Wait's Pr. 193. The causes of action, to constitute misjoinder, must be *good* causes of action. A demurrer does not lie for misjoinder of *bad* causes of action. *Bassett v. Warner*, 23 Wis. 673; *Truesdell v. Rhodes*, 26 id. 215; *Willard v. Reas*, id. 540; *Lee v. Simpson*, 29 id. 333; *Riemer v. Johnke*, 37 id.

JANUARY TERM, 1885.                 593

Hurlbut vs. Marshall, imp.   Hurlbut vs. Kelly, imp.

258. Nor is it any ground of demurrer that the causes of action are not separately stated. *Riemer v. Johnke, supra; Clark v. Langworthy,* 12 Wis. 442. Treating the various causes of action or claims in the complaint as good, they are not improperly joined. The statutes (secs. 3218–3227, R. S.) show the clear intent of the legislature to provide a remedy by which the creditors of an insolvent moneyed corporation might not only reach the ordinary assets of the institution, but also enforce every liability of the officers, directors and stockholders, which "in any event or contingency" can be enforced for the benefit of creditors. This court has determined that the action thus authorized is equitable; that it must be brought in behalf of all the creditors; that all the stockholders are necessary parties defendant; that, in view of the statute, a complaint seeking to enforce these various liabilities in one action is not multifarious; and that this remedy, once started, is exclusive. *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57; *Coleman v. White,* 14 id. 700; *Cleveland v. Marine Bank,* 17 id. 545; *Merchants' Bank v. Chandler,* 19 id. 434; *Ballston Spa Bank v. Marine Bank,* 18 id. 490; *Pierce v. Milwaukee Const. Co.* 38 id. 253.

But the appellant contends that sec. 3221, R. S., only permits stockholders and directors to be made parties when they are "made liable by *law*" for the payment of corporate debts; that this means made liable by *statute;* and that, therefore, the common-law liability of directors for negligence or mismanagement cannot be enforced in this action. This contention admits that the complaint shows good causes of action against the appellant under the statute for the amount of his stock (R. S. p. 607, sec. 47), and for voting and receiving illegal dividends (secs. 1755, 1765, R. S.), and at common law for negligence; but it maintains that as this liability for *negligence* is not *created* or "made" by statute, it cannot be enforced in this proceeding. The *language* of the statute is clearly against any such construction. If

directors are liable for negligence by general principles of law and equity, they are "made liable by law" as much as if the liability was created by statute. This is self-evident. That this was the intent is shown by other provisions. Stockholders and directors are *both* authorized to be joined when "made liable by law" (sec. 3221, R. S.). If this means "made liable by *statute*," stockholders could not be joined, unless made liable by statute. Yet when joined, sec. 3226 provides for the enforcement of the stockholder's liability for unpaid subscriptions, which is purely a common-law liability. Moreover, sec. 3237, R. S., gives the circuit court jurisdiction over directors, (subd. 1) to compel them *to account* for their official conduct in the *management* of the funds and property committed to their charge; and (subd. 2) " to order and compel payment by them to the corporation which they represent *and to its creditors,* of all sums of money and of the value of all property which they may have acquired to themselves or transferred to others, *or may have lost or wasted by any violation of their duties* as such directors." Here is plain statutory recognition that if directors *lose* or waste the corporate assets *by any violation of their duties* they are, in the language of sec. 3221, "liable by law for the payment of" corporate debts to the creditors. By sec. 3239 the jurisdiction thus conferred to compel payment by directors to creditors, of money and effects lost or wasted " *shall* be exercised in an action prosecuted by . . . *any creditor* of such corporation." If, then, negligence by which the assets are "lost or wasted" is actionable at all, as we must assume it to be on this branch of the demurrer, it involves a *violation of duty* for which the court may compel the directors to pay the debts to the amount of the loss in an action prosecuted by "any creditor of the corporation."

The *reason and object* of the statute, as well as its letter, require the enforcement of the common-law liability as well as the statutory liability of directors in this action. The

provisions of the statute for the compulsion of directors to pay creditors the amount "lost or wasted" by their mismanagement or breach of duty, go upon the principle now firmly established in this country, that the directors of a corporation are *trustees* for the creditors of the corporate assets.    Angell & A. on Corp. § 779 *a;* Morawetz on Corp. §§ 559, 574; Taylor on Corp. §§ 654, 656, 758, 813; Field on Corp. §§ 172, 173; *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57; *Brinckerhoff v. Bostwick,* 88 N. Y. 52; *Bartlett v. Drew,* 57 N. Y. 587; *Curran v. State,* 15 How. 304, 311; *Railroad Co. v. Howard,* 7 Wall. 392, 409; *Lyman v. Bonney,* 101 Mass. 562.    This liability of directors for the mismanagement of corporate affairs is one of the assets for the payment of creditors.    Morse on Banking, 135.    The directors being trustees, liable in equity to account to the creditors for breach of their trust duty, and this liability being assets for the payment of debts, the policy of the statute authorizing the directors to be made parties and the wisdom of that policy are manifest.    The plan is that in an action designed to distribute the corporate assets amongst the creditors *all* the assets should, so far as practicable, be realized and distributed in a single action.    And so by sec. 3221 all the directors may be joined, by sec. 3226 their respective liabilities may be enforced, and by sec. 3237 they may be compelled to account for mismanagement and to pay the creditors the amount lost or wasted by their violation of duty.

If the directors may not be joined in this action except for liability *created* by statute, secs. 3221 and 3226, in respect to directors, are meaningless; for there is no conceivable civil liability of directors *created* or *made* by statute. The statute, indeed, *declares* liability for voting and paying dividends when the corporation is insolvent.    Sec. 1765, R. S.    But that provision only declares a liability that exists without it.    To vote and pay such dividends is a fraudulent

transfer of the corporate funds, by the doctrines of a court of equity. Thompson on Liability of Stockholders, §§ 18, 19; *Bank of St. Marys v. St. John*, 25 Ala. 609; *Bartlett v. Drew*, 57 N. Y. 587; *Osgood v. Laytin*, 3 Keyes (N. Y.), 521. There is, in fact, but one general ground of liability of directors, viz., violation of duty in the management of the corporate funds and property. Declaring and paying illegal dividends is but one species of mismanagement of the trust funds. If the directors steal or convert to their own use the corporate property, or *lose* it by gross negligence, their liability is for mismanagement. There is no other liability of directors. There is no warrant in the statute or in reason for holding the directors liable in such an action for one kind of mismanagement only. If they are liable for paying illegal dividends, they are liable for such other violations of trust duty as stealing, converting, or squandering the assets or losing them by gross negligence.

Decisions in other states on this question of multifariousness, where there is no such statute, have no bearing. It was to avoid the confusion and expense of compelling the five hundred creditors of this bank to become parties to and prosecute different actions to enforce these various liabilities that their joinder in a single action was permitted *by statute.* The evil of multifariousness, if any, was deemed less than the evils of a multiplicity of actions.

If it is said that the liability of directors for voting and paying illegal dividends (sec. 1765, R. S.) is only to the creditors *then* existing and should not be joined with claims by *all* creditors, the answer is: *First.* The demurrer does not specify the claim for voting and paying illegal dividends as misjoined. It does not refer to that claim or cause of action at all. Not being specified, the demurrer does not reach the objection. *Second.* In enforcing liability of directors to creditors existing when dividends were paid, all the present creditors are *proper* if not necessary parties. Those whose debts

accrued after the dividends were paid are *directly interested* in the recovery of those dividends, because their application to the debts existing at the time of such payments diminishes the claims to be paid from the general assets and increases the dividends of all the creditors.   It would be difficult, if not impossible, to marshal and apply these partial and general assets in due order amongst the creditors, except in a single action wherein they are all parties.

We have thus far considered this branch of the demurrer, conceding that the complaint unites several causes of action. The statute permits the union.   It may well be maintained, however, that this complaint really contains but *one cause of action*, viz., to sequester and marshal the assets of this corporation and to distribute them amongst the corporate creditors according to their respective rights and priorities. The claims for unpaid subscriptions to stock, for the face of stock, for illegal dividends, for voting such dividends, for effects lost by gross negligence, are all germane to the general object of the action.   They relate to "matters of the same nature, all connected with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general object of the action may be different and some may be interested only in a part of the general claim."   *Supervisors v. Walbridge,* 38 Wis. 179–189; *Janesville Cotton Mfg. Co. v. Ford,* 55 id. 197; *Allen v. Montgomery R. R.* 11 Ala. 437–447; *Norris v. Hassler,* 22 Fed. Rep. 401; *Gaines v. Chew,* 2 How. 642.   The various liabilities are not only connected but mostly dependent on each other.   The extent of the enforcement of each depends upon the result of the enforcement of those which are prior. These connected and dependent rights and liabilities can only be adjusted by a court of equity in a single proceeding.

We conclude that the directors are liable in this action to account for the management of the assets of this bank and to pay the creditors the sum lost by voting and paying illegal

dividends and by gross negligence in the performance of their duties as directors; that they are thus liable as trustees and that such liability is one of the assets of this bank; that the joinder of the various claims against stockholders and directors is permitted by the letter and spirit of the statute; that such union is not only not a misjoinder of causes of action, but is not even a *joinder* of *causes* of *action* but of claims constituting a single cause of action.

In this argument we have not noticed several points urged in the argument of the appellant in the court below, viz.: (1) That the complaint shows no cause of action against the directors for negligence. (2) That the banking law provides for no such officer as *director*. (3) That the election and qualification of appellant as director is not shown. (4) That directors cannot be held for negligence in this action, because it would deprive them of a jury trial. (5) That under sec. 5, art. XI, of our constitution, no liability can be imposed on banking officers, unless submitted to the people as an amendment to the banking law. These points are wholly immaterial here; for if well taken, the liability of appellant for the amount of his stock, imposed by the banking law itself (§ 47, p. 607, R. S.), sustains the complaint against the charge of insufficiency; and to show the other claims to be bad only shows them *not* to be demurrable for misjoinder. We will, however, briefly state our conclusions upon these questions, on which we commenced and prosecute this action:

*First.* The complaint shows a cause of action for negligence of the directors. Its allegations are identical with those of *Brinckerhoff v. Bostwick,* 88 N. Y. 52. That the directors are liable for the loss of corporate property by their negligence, and that the allegations of the complaint show negligence on the part of these directors, see *Osgood v. Laytin,* 3 Keyes, 521; *Trustees, etc. v. Bossieux,* 4 Hughes C. C. 387; Wharton on Negligence, §§ 510, 511; 19 Cent. L. J.

305, 327; *Gill v. Middleton,* 105 Mass. 477; *F. & M. Bank v. Downey,* 53 Cal. 466; *Gratz v. Redd,* 4 B. Mon. 178; *Cumberland C. & I. Co. v. Parish,* 42 Md. 598; *Godbold v. Branch Bank,* 11 Ala. 191; *United Society of S. v. Underwood,* 9 Bush (Ky.), 609; Taylor on Corp. §§ 756, 758 and notes; *Shea v. Mabry,* 1 Lea (Tenn.), 319. It seems the complaint need not allege the facts showing the liability of directors and stockholders, but simply ask that they account for their management and pay to the creditors the amount due from them and the amounts *lost* or wasted by any violation of their duties as directors. Such must have been the view of counsel in *Cleveland v. Marine Bank,* 17 Wis. 545, and such is the form of complaint, provided by Mr. Abbott under the same statute. 1 Abbott's Forms, Nos. 694, 695, pp. 616, 617. This view seems to be that the action is analogous to an insolvency or bankruptcy proceeding, in which on a deficiency found after the application of the ordinary assets these liabilities of directors and stockholders will be ascertained and enforced under the direction and control of the court as to the issues and their trial.

*Second.* While the banking law does not in terms create the office of director (R. S. p. 600, sec. 21), that office is a necessary incident to the corporation whose creation is provided for. Morse on Banking, 107. The banking law expressly recognizes the office. R. S. p. 599, sec. 17; p. 606, sec. 41.

*Third.* In actions *against* directors it is not necessary to allege their appointment, election or qualification. That is not even necessary in actions *against* executors, administrators or receivers, sought to be made liable in their representative capacities. 2 Wait's Pr. 374, 375.

*Fourth.* To enforce the liabilities of directors for negligence in this equitable action does not deprive them of any right to jury trial. Being *trustees,* they are accountable in equity and by direct provision of our statute for their management of the trust property, whether for malfeasance,

misfeasance, or nonfeasance.   See *ante* and secs. 3237, 3239, R. S.

*Fifth.*   The liability of stockholders for receiving illegal dividends and of directors for negligence exists, although not imposed by the banking law.   The liability to repay such dividends is declared by statute but exists independently of the statute.   Sec. 1765, R. S.; Thompson on Liability of Stockholders, §§ 18, 19; *Bank of St. Marys v. St. John*, 25 Ala. 609; *Bartlett v. Drew*, 57 N. Y. 589.   The liability for negligence rests on general principles of both law and equity. The argument of the appellant is that sec. 5, art. XI of our constitution requires that any general banking law shall be adopted by the people; that our banking law (R. S. p. 596 *et seq.*) was so adopted; that such banking law imposes no liability on directors and none upon stockholders, except for the amount of their stock; and that therefore no other liability can be imposed or exist, except by an amendment to the banking law adopted by the people.   The vice of the argument consists in not distinguishing between a " banking law " and the rights and liabilities that necessarily spring from the operation of such a law.   It would be impracticable to define the latter in the law and they are not within the aim of the constitutional provision, which is only to require submission to vote of the scheme and mode of banking.   While an amendment to the banking law which relates to the mode or conditions of banking must, doubtless, be submitted to the people, a law which provides and regulates remedies to protect the public from the frauds and wrongs of officers and others in the operation of the law is not in the sense of the constitution a " banking law."   *Brower v. Haight*, 18 Wis. 102.   If, as argued, the only liability of stockholders and directors is that imposed by sec. 47, p. 607, R. S., there would be no security for the honest management of these institutions; there would be no civil or criminal liability for embezzlement; no liability for mis-

management; and no liability at law or in equity for any breach of trust or duty.

3. The demurrer for defect of parties defendant is for an *excess of parties*, and therefore bad.    *Truesdell v. Rhodes*, 26 Wis. 215; *Great Western Comp. Co. v. Ætna Ins. Co.* 40 id. 373; *Arzbacher v. Mayer*, 53 id. 380.

ORTON, J.    Two of the defendants demurred to the complaint separately, and both demurrers were overruled and stricken out as frivolous, on the motion of the plaintiff, and each of said defendants has appealed to this court from the order so overruling and striking out his demurrer.    The two demurrers involve the same questions, and both appeals will be disposed of together.

As to the first point made in the respective briefs of the learned counsel of the appellants, and urged with great force of argument and pungency of criticism, it is sufficient to say that this court is perfectly satisfied with the ruling in *Diggle v. Boulden*, 48 Wis. 477; *Lerdall v. C. O. L. Ins. Co.* 51 Wis. 426; *Magdeburg v. Uihlein*, 53 Wis. 165; *Krall v. Libbey*, 53 Wis. 292; *Straka v. Lander*, 60 Wis. 115; and *Hoffman v. Wheelock*, *ante*, p. 434, "to make no distinction between an order striking out a demurrer as frivolous and one overruling it on argument."

The following is a concise statement of the allegations of the complaint as substantially made in the excellent brief of the learned counsel of the appellant *Kelly*, and proper to be reproduced here in elucidation of the objection made to the complaint on the demurrers:

(1.) Strong's Bank of Green Bay is a banking corporation, with banking powers, doing business as such in the city of Green Bay, under and by virtue of the laws of this state.

(2) That it owes the plaintiff $101.56, a balance of deposits made by him in the usual course of business between May 3 and May 23, 1884, and that payment thereof has

been demanded and refused; that it owes other persons, whose names and the respective amounts due each are unknown to the plaintiff, more than $200,000; and that this action is brought in behalf of plaintiff and all other creditors who choose to become parties thereto or become interested therein.

(3) That said bank has closed its banking office and is insolvent; has assets unknown in amount, but less than the aggregate indebtedness, which ought to be applied to the payment of the indebtedness.

(4) That said bank has been insolvent ever since January 1, 1878, during all of which period the defendants Strong, Neese, *L. M. Marshall, D. M. Kelly,* and M. P. Skeels had been its directors, owning stock in the bank.

(5) That the capital stock of said bank is $50,000, in shares of $100 each.

(6) That these directors, including the appellants, knowing of the insolvency of the bank, semi-annually from January 1, 1878, to January 1, 1884, voted, paid, and each received a dividend of five per cent. of the par value of the stock held by him, without having reason to believe that there were sufficient net profits properly applicable to such payments.

(7) That said votes of said directors declaring said dividends when said corporation was insolvent as aforesaid, diminished and impaired the capital and capital stock of said bank, and that there were never any net profits of said bank or its business applicable to the payment of said dividends, or either of them.

(8) In a schedule, which forms a part of the complaint, is stated the amount of stock held by each defendant stockholder, and the amount of dividends so received by each, and it is stated therein that the demurrants each owned ten shares out of 500 of stock, and had regularly so received dividends, amounting in all in each case to $650.

(9) That when these dividends were so declared and re-

ceived, a large portion of the debts of the bank now existing, existed and was due to the same creditors as now, such claims having exceeded $100,000 ever since January 1, 1879.

(10) That during all the time since January 1, 1878, to the commencement of this suit, said Henry Strong was president and said Louis Neese was cashier of said bank, and that Strong fraudulently converted more than $100,000 of the funds of the bank to his own use, and replaced the same with worthless securities, known to the president and cashier to be so worthless, and that they reported to the state treasurer, etc., said worthless securities as of par value.

(11) That during all the time from January 1, 1878, to the commencement of this suit, said directors of the bank grossly neglected to perform their official duties, and negligently permitted the money and effects of the bank to be stolen, wasted, and squandered; that they allowed insolvent and irresponsible persons and corporations to overdraw their accounts, and negligently allowed the moneys of the bank to be loaned to irresponsible persons without adequate security, whereby said money was lost, and that they negligently permitted the president of said bank to steal and embezzle the funds and securities of the bank, by which $100,000 of the funds of the bank were lost, and the bank thereby became insolvent, and unable to pay its creditors more than twenty cents on the dollar of their claims.

The prayer for relief is appropriate to these several causes of complaint.

The brief of the learned counsel of the respondent is elaborate and very able, and should be preserved in the report of the case as a complete vindication of the complaint in all particulars. It would seem, however, that every point made in the brief of the learned counsel for the appellants is answered by the nature of this suit under the statute, and by the clear statutory and common-law liability of the directors and stockholders of an insolvent banking corporation.

1. It is not disputed that this suit is brought under the statute, in case where a corporation having banking powers has become insolvent, by one of its creditors, and in behalf of all other creditors of the bank, "for the purpose of closing up the business of such corporation," and to charge the directors, trustees, or other officers or stockholders thereof on account of their liability created by law.   In such a case an injunction issues to restrain further action of the bank, and a receiver is appointed to take charge of the property and effects of such corporation.

2. This suit, when commenced, is *exclusive* of all actions on behalf of the creditors of such an insolvent bank, and all the creditors are compelled to seek their remedy therein, and if there is any liability of the directors, stockholders, or officers of the bank to the bank, or to its creditors, " in any event or contingency," such liability must be enforced, if at all, in this one suit, which cannot be discontinued before final judgment without the consent of every creditor who chooses to appear and prosecute.

3. The suit is for the purpose of closing up the business of the insolvent bank, and of distributing its entire fund *pro rata* among its creditors.   It is final bankruptcy, in which all the property, credits, and effects of the bank, or in which the bank has any interest as a chose in action, or otherwise, are gathered and brought to the possession of the receiver, to be applied to the payment of the debts.

This is the theory, nature, and comprehensive scope of this suit under the statute; and can it be that there is any class of liabilities of the directors or other officers or stockholders to the bank, the enforcement of which would increase the fund or property of the bank applicable to the payment of its debts, to be excluded from it, and therefore forever left beyond the reach of the creditors, upon some technical ground of " misjoinder of actions," or some finely-wrought distinction between "liabilities by *statute* and lia-

bilities by law?" According to the complaint, the bank has been insolvent since January 1, 1878, and, within a year of that time, it owed present creditors over $100,000, and now owes the creditors over $200,000; and the directors, from that date on, declared semi-annual dividends to the defendant stockholders of five per cent., including the directors as such stockholders, and that said directors never paid up their stock subscriptions, and the stockholders are made liable by statute to the creditors to the amount of such stock. Part of this liability consists in the stockholders unlawfully appropriating to themselves the funds of the bank as dividends to which they were not entitled, and a part in their indebtedness to the bank for stock unpaid, and to the further amount of their stock.

It is objected that the present plaintiff instituting this suit had no claim against the bank as a creditor when this misappropriation of the funds was made, and cannot, therefore, be joined with the creditors existing at that time. But he *must* be joined with all the creditors in this suit, and cannot sue alone in another action. A large number of creditors are interested in that fund, and they are virtually plaintiffs in this suit; and if their claims are paid or lessened by the application of that fund, the fund remaining applicable to the payment of the claims of the plaintiff and other subsequent creditors is correspondingly increased, and their chances of payment. Every one interested in the final "closing up the business of such corporation" is a proper party to such suit, either by reason of his liability or as a creditor of the bank, as we understand the statute. It may be that no one except the corporation itself may bring suit for unlimited and unliquidated damages against the officers and directors for their misfeasance in the management of the affairs of the bank; but there is no such claim in this complaint. The president, Henry Strong, is charged with the fraudulent misappropriation of $100,000 of the funds;

and the directors are charged with gross negligence in permitting the assets to be squandered, stolen, and wasted by borrowers on worthless securities, and the president, Strong, to have so embezzled the $100,000. These are all amounts which can be ascertained and are certain, for which the directors are clearly liable by being parties to the squandering and embezzlement of the funds of the bank.

The defendants in this suit are asked to return to the fund or assets of the bank all they have illegally, fraudulently, or criminally diverted and converted to their own use, so that the creditors may be paid. There is a unity and harmony in the suit which cannot be broken without defeating the sole objects of the statute, and that is to finally and forever close up the business of the corporation, and to distribute and apply its assets to the payment of the debts. If the officers, directors, or stockholders, or any one else, have taken and carried away and converted the property or funds of the bank wrongfully and unlawfully or criminally, they are trustees of the bank and remotely of the creditors,— trustees *de son tort*, it may be, but nevertheless trustees,— and may be compelled in this suit to account therefor. Hill on Trusts, § 173. All the principles involved in such a suit are elementary, and not at all abstruse. The statutes of other states, similar in their provisions, are construed in harmony with these views. Thompson on Liability of Stockholders, §§ 12–18; Thompson on Liability of Officers, etc. 431, and notes; Cleaveland's Banking Laws, 50 *et seq.;* Angell & A. on Corp. §§ 146, 246.

The point is made that our state banks have no statutory authority to have a board of directors. This power is inherent in all private corporations. Angell & A. on Corp. § 231. It may be added further that under sec. 3237, R. S., the circuit courts "have jurisdiction over directors, managers, trustees, and other officers of corporations, to compel them to account for their official conduct in the management

and disposition of the funds and property committed to their charge; to order and compel payment by them to the corporation whom they represent, and *to its creditors*, of all sums of money and of the value of all property which they may have acquired to themselves or *transferred to others*, or may have lost or wasted by any violation of their duties as such directors, managers, trustees, or other officers." This being the only suit which can be brought against an insolvent bank, the circuit court may well exercise therein this plenary jurisdiction.

This construction of the statute and these general observations sufficiently answer all the objections taken on the demurrer to the complaint.

*By the Court.*— The orders of the circuit court overruling the demurrers are affirmed, and the cause remanded for further proceedings according to law and equity.