WILLIAMS and others, Respondents, vs. BREWSTER, imp., Appellant.

*January 16—April 17, 1903.*

*Corporations: Insolvency: Enforcing all liabilities of directors, etc., to creditors, in single action: Stock subscriptions, how paid: Notes: Unlawful dividends: Liability of directors: Banks and banking.*

1. In a suit to enforce one of the liabilities mentioned in sec. 3223, Stats. 1898, all existing causes of complaint within the scope of that section, and all liabilities to which creditors as a class may resort to satisfy their claims, affecting the corporation in-

volved, are germane thereto, and, with the primary right sought
to be vindicated, constitute but one cause of action.

2. Ch. 140, Stats. 1898, was framed with a view of having the mat-
ters referred to in the preceding paragraph worked out in a
single suit through the machinery of the Code, which contem-
plates a primary right as drawing to it all minor matters ger-
mane thereto and including the whole as but one controversy,
regardless of how complicated such matters thus presented for
litigation may be as between plaintiffs and defendants or as be-
tween the parties on either side, and of whether such matters
or some of them might of themselves form the subject of a
primary right between the parties chiefly concerned therein,—
enabling the court to close the whole subject by a single de-
cree, giving to each party to the litigation, regardless of his lo-
cation upon the record, the particular measure of relief as
against any other party or parties, to which he is entitled.

3. The language of this court as regards this class of cases in
   *Hurlbut v. Marshall,* 62 Wis. 590, 22 N. W. 852, is reaffirmed:
   "This suit, when commenced, is exclusive of all actions on be-
   half of the creditors of such an insolvent bank, and all the
   creditors are compelled to seek their remedy therein, and if
   there is any liability of the directors, stockholders, or officers
   of the bank to the bank, or to its creditors, in any event or con-
   tingency, such liability must be enforced, if at all, in this one
   suit, which cannot be discontinued before final judgment with-
   out the consent of every creditor who chooses to appear and
   prosecute."

4. The words above used, "liability of the directors, stockholders,
   or officers . . . to the bank, or to its creditors," mean lia-
   bilities to the bank forming part of the trust fund in which
   the creditors are concerned, and liabilities to creditors gener-
   ally or to a class of them, not individual common-law liabilities
   of individual directors to individual creditors, such as one for
   deceit. It includes, among others, all liabilities created by law
   for the protection or benefit of the corporation or its creditors
   such as those created by sec. 1765, Stats. 1898.

5. The language of sec. 1765, Stats. 1898, "capital fully paid in,"
   contains the idea of full payment of the authorized capital into
   the corporation, either in money or its equivalent in property,
   effecting an extinguishment of the subscription liability for the
   stock, and an actual addition to the capital of the corporation,
   not a mere agreement to contribute to the capital stock.

6. A subscriber for stock in a corporation does not contribute to its
   capital by his subscription or by changing the form of his in-
   debtedness for stock from one upon a mere subscription to one

upon a note given for a subscription. The giving of a note in such a case operates only to postpone the time of payment for the stock till the due date of the note.

7. Sec. 1765, Stats. 1898, applies to banking corporations.

8. Such section renders directors of a corporation participating in the payment of dividends out of corporate property before the authorized capital has been fully paid in, regardless of any other circumstance, jointly and severally liable to the creditors of the corporation then existing as a class; that is, jointly and severally liable to the creditors, not so liable to each individual creditor.

9. The liability having been fixed by operation of the statute upon the acts of the directors, the status of the creditors, and the condition of the capital of the corporation, it cannot be extinguished by subsequent payment or collection of the unpaid capital.

10. Sec. 1765, Stats. 1898, contains two distinct prohibitions: First, payment of dividends before the capital of the corporation shall have been fully paid in; second, payment of dividends thereafter other than out of the net profits of the corporation properly applicable thereto, such payment effecting a diminution of the corporate capital. The doing of either of the prohibited acts is made penal, conditioned, however, as to the second, that the corporation is either insolvent or in danger of insolvency, the directors not having reason to believe that there are sufficient net profits properly applicable thereto to pay the dividend without diminishing the corporate capital.

11. The two parts of the section respecting the penal liability, the one relating to the first and the other to the second prohibition, are construed to have been used by the legislature in a disjunctive sense, not in a conjunctive sense.

12. It is not necessary that a director should actively participate in the unlawful payment of a dividend in order to incur liability under sec. 1765, Stats. 1898. If he participates in such payment by having notice of and consenting thereto and participating in the benefits thereof he comes within the condemnation of the statute.

[Syllabus by Marshall, J.]

Appeal from a judgment of the circuit court for La Fayette county: B. F. Dunwiddie, Judge. *Affirmed.*

The action at first was to enforce the statutory double liability of the stockholders of the defendant bank. After a challenge to the complaint on demurrer was finally settled in

plaintiff's favor by the decision of this court, reported in 97 Wis. 561, 73 N. W. 40, and the remission of the record to the circuit court, permission was granted, against objection, to amend the complaint by adding as defendants the officers and directors of the bank, with appropriate allegations to charge stockholders with liabilities to return dividends unlawfully paid, and the directors with statutory liabilities under sec. 1765, Stats. 1898, for paying dividends before all the stock was paid in and when they knew the bank was insolvent. The court decided on the evidence that dividends were voted by the directors and paid in violation of said section, substantially as alleged.

The finding that dividends were paid when the stock was not fully paid in was based on the following facts: When the corporation commenced business, the situation as to ownership of stock and the amount paid in therefor was as follows: William Law was a subscriber for $500, which was fully paid for. C. T. Douglas was a subscriber for $500, for which he gave his note which was never paid except as hereafter stated. C. L. Douglas was a subscriber for $4,000 of the stock. She made no payment thereon. George W. Douglas, her husband, was a subscriber for $45,000 of the stock, for which he turned in bank assets of the bank which the new institution succeeded, valued at $18,575, the good will of the old bank, which he valued at $8,000, and his unsecured note for the balance, $22,448.98. Neither the note nor the good will had any cash value. George W. Douglas at no time reduced the amount of his note below $14,000.

The court further found as follows: Notwithstanding the situation before stated, and the fact that there were no available assets out of which to make dividends, several were voted and paid, defendant *Brewster* being a guilty participant in all the transactions. He received upon his stock the benefit of the last dividend, declared July 2, 1894, in common with other stockholders. Before that, George W. Douglas was permitted

to return to the bank for cancellation $23,000 of his stock for that amount of his notes held by it. C. T. Douglas was also permitted to take up his note by turning in his stock. Other stock was turned over to the bank and assets taken out therefor, leaving only $25,800 of the capital stock outstanding. The deficiency in the bank's capital was never after that made good, nor any part thereof. All the transactions referred to were ratified by *Brewster* as one of the directors of the bank. At no time were there any net profits in the bank applicable to pay dividends. The money used for that purpose was taken from that which was necessary to satisfy the liabilities to depositors. When the last dividend was paid the bank was insolvent. All the capital paid in, and much more, had been lost. The officers and directors did not, when such dividend was declared, have any reason to believe that it could be paid without impairing the bank's capital. Other facts were found, sufficient with those mentioned, to warrant the judgment appealed from if the conclusions of law in respect thereto are right. The judgment was against appellant under sec. 1765, Stats. 1898, as a stockholder, to refund to the bank for the benefit of its creditors all sums received by him as dividends, amounting with interest to $1,701.20, and against him as a director, for an amount sufficient to satisfy the claims of all creditors established in the action which existed at the time of the last dividend, July 2, 1894, and left unsatisfied after applying thereon the other moneys applicable thereto under the terms of the judgment. The liability to creditors went both upon the ground that when the dividend was paid the capital stock had not been fully paid in, and on the ground that the corporation was insolvent when such dividend was paid, and that the directors declaring the same, including *Brewster,* had no reason to believe that there were sufficient net assets properly applicable thereto to pay the same without impairing or diminishing the capital. This appeal is solely by the defendant *Brewster.*

For the appellant there was a brief by *J. B. Simpson* and *Spensley & McIlhon,* and oral argument by *Calvert Spensley.*

For the respondents the cause was submitted on the brief of *Rufus B. Smith.*

The following opinion was filed February 3, 1903:

MARSHALL, J. The first error assigned by appellant's counsel is that the amendment of the complaint so as to enforce liabilities claimed to exist under sec. 1765, Stats. 1898, changed the nature of the action; that such liabilities are properly enforceable only at law, while the action as brought was a suit in equity. That involves a subject several times fully discussed in this court, and the question now raised so plainly decided adversely to appellant's position that we do not consider it open for discussion. In *Hurlbut v. Marshall,* 62 Wis. 590, 22 N. W. 852, it was held that all liabilities of officers, stockholders and directors of a corporation that can in any event be enforced for the benefit of creditors of a corporation generally or as a class, may be dealt with in a single suit and are so connected with each other as to constitute but one cause of action. Since that decision, we venture to say, nothing has been said in any opinion here, when rightly understood, casting any doubt but that when the primary purpose of a suit in equity is to enforce any such liability, or is to sequestrate the assets of the corporation and distribute the same for the payment of its debts, all liabilities of officers and stockholders to the corporation, whether created by law or otherwise, and all liabilities of the directors and stockholders to creditors, created by law, are germane to the main purpose of the litigation, and not only may be joined therewith as a part thereof under established rules of equity jurisprudence, but, under the scheme of the Code for working out the various liabilities in which creditors of a corporation as a class are interested, must be so joined, except as provided in ch. 129,

Laws of 1901, which does not affect this case. See *McNaughton v. Ticknor,* 113 Wis. 555, 89 N. W. 493. This action was plainly in equity to enforce a liability of stockholders created by law, in which the creditors of the corporation were all interested. It was one of the liabilities mentioned in sec. 3223, Stats. 1898. That provides:

"Whenever any creditor of any corporation shall seek to charge the directors, trustees or other officers or stockholders thereof on account of any liability created by law, he may commence and maintain an action for that purpose in the circuit court," etc.

It was a liability which the court has frequently held must be worked out in a suit in equity, and that such was the legislative purpose plainly written into ch. 140, Stats. 1898. Following sec. 3223, expressly authorizing any creditor of a corporation to bring such a suit as this was at the start, is sec. 3224, providing as follows:

"The court shall proceed therein as in other cases, and when necessary shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers who shall possess all the powers conferred and shall be subject to the obligations imposed on receivers by the provisions of section 3219; but if, upon the filing of the answer or upon the taking of such account, it shall appear that the corporation is insolvent and that it has no property or effects to satisfy such creditor, the court may proceed without appointing any receiver to ascertain the respective liabilities of such directors, trustees or other officers and stockholders, and enforce the same by its judgment as in other cases."

In *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922, it was held that when the primary purpose of a suit is to enforce any one of the liabilities mentioned in sec. 3223, the other liabilities that may exist, mentioned in such section, are germane thereto, and must be joined therewith if enforced at all. That covers the question under discussion.

*Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536, is referred to confidently by counsel as holding that liabilities of directors of a penal character cannot be enforced in an action commenced under sec. 3223, Stats. 1898. We are unable to discover anything in the opinion to that effect. It was held that a liability to a depositor for damages for deceit was not a liability to creditors within the meaning of sec. 3223 as construed in *Hurlbut v. Marshall* and other cases, but a liability of a purely personal nature to the particular creditor imposed upon; that it was neither a liability to creditors in any sense, within the meaning of sec. 3223, nor one germane to any such liability. Speaking of liabilities under sec. 1765, Stats. 1898, it was said that they are penal in character and not assignable. That has nothing to do with whether they can be worked out with other liabilities to creditors as a class in an equitable action. Being liabilities created by law to creditors generally or a class of them, according to circumstances, they fall within the literal sense of sec. 3223 and within the plainly expressed decision of the court in *Hurlbut v. Marshall,* 62 Wis. 590, 22 N. W. 852, *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922, and *Gager v. Bank of Edgerton,* 101 Wis. 593, 77 N. W. 920; *McNaughton v. Ticknor,* 113 Wis. 555, 89 N. W. 493; *Foster v. Posson,* 105 Wis. 99, 81 N. W. 123; supported in principle by *Finney v. Guy,* 106 Wis. 256, 82 N. W. 595; *Rehbein v. Rahr,* 109 Wis. 136, 85 N. W. 315; *Eau Claire Nat. Bank v. Benson,* 106 Wis. 624, 82 N. W. 604; *Gager v. Paul,* 111 Wis. 638, 87 N. W. 875. They are among the liabilities that not only can but must be worked out in equity, and were intended, by the statutory plan contained in ch. 140, Stats. 1898, to be included in a single suit. That the liabilities created by sec. 1765 are not mere personal liabilities of each director to each creditor, or the directors jointly to each creditor, as in case of a common-law action for deceit held in *Killen v. Barnes*

not to be within the scope of sec. 3223 and the enforcement thereof not germano to that of any liability mentioned in such section, is plain from the literal sense of the language. It provides that the offending directors shall be jointly and severally liable to the creditors of the corporation at the time of the offense. The liability is several and joint to all the creditors as a class, existing at a particular time. One of the offenders cannot atone for his offense by anything less than payment of all the debts himself if necessary, but no one creditor has any preference over any other to the benefit of that liability as to any one or all of the offenders. The liability is to the creditors equally. All must join in order to participate. Each has a right to have all the offenders brought before the court and each of the latter also possessses that right. Such is the statutory plan. This court has uniformly so held. The Code, in its completeness, embodying as it does the broad, comprehensive powers of the old chancery practice respecting the action which now stands for what was formerly a suit in equity, enables the court to administer such plan so as to settle a multitude of controversies having more or less connection with each other, in one instead of a multitude of actions. *Gager v. Marsden, supra.* That there are some embarrassments attending the administration of such complicated matters as may under our system be presented to a court for adjudication in a single decree, must be admitted. But the facility with which the court may lay hold of and draw together, as a single controversy, a dominant matter and everything germane thereto, regardless of complexities of legal and equitable rights and the number of parties, and weigh out to each person his legitimate measure of relief, regardless of his mere location on the record as a party, doing the work by one broad, comprehensive decree, that might, under a different system, require a multitude of actions, or proceedings in their nature so interminable as to be exhausting to courts and litigants and the public as well,

and do it better, vindicates the wisdom of the framers of the Code in embodying therein the valuable features of equity jurisprudence as it exists by the common law.

It was believed when *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922, and *Gager v. Bank of Edgerton,* 101 Wis. 593, 77 N. W. 920, were written, that the law governing this class of cases would be thereby so thoroughly entrenched as to leave no reasonable ground for further appeals to this court in regard to it. It was undoubtedly so intended in the earlier case of *Hurlbut v. Marshall,* as is evidenced by the clear and emphatic language used by Mr. Justice ORTON, who wrote the opinion, aided by the argument of counsel, which was so referred to as to make it a necessary part of a proper report of the case. Observing in *Gager v. Marsden* that for some reason, not easy to discover, *Hurlbut v. Marshall* was not understood, an attempt was made to set uncertainties at rest, if possible, by stating the principle thereof as understood here, in this language:

"It was supposed that *Hurlbut v. Marshall,* 62 Wis. 590, determined for all time in this court . . . that but one winding-up suit to settle the affairs of a corporation is proper, and that in such suit all the rights and all the liabilities of creditors, officers, and stockholders are to be worked out. This court so understood it then and has never departed from that view. . . . The careful practitioner hardly need go astray because of cases where only a part of the relief obtainable in a winding-up proceeding was sought, and which were sustained for that particular relief."

That was followed by an analysis of ch. 140, showing that, instead of the various liabilities mentioned therein, as to a single corporation, being subjects of as many distinct causes of action, they are but parts of one cause of action, designed, by the statutory plan of such chapter, to be settled in one suit; and that the Code is perfectly adapted to make such scheme effective. To show to what extent the court voiced, in the later cases, the decision in *Hurlbut v. Marshall,* and that it

rules this case, attention is called to the fact that the first complaint in the early case, the same as here, sought only the appropriate relief in an action strictly to enforce liabilities of stockholders upon their stock, and that subsequently, as here, by amendment the complaint was broadened out so as to enforce many other liabilities directly or indirectly to creditors as a class,' including the penal liabilities under sec. 1765, Stats. 1898. Here is a part of the prayer for relief:

"That said directors be adjudged to pay all dividends declared and paid as heretofore set forth, to the present creditors of said bank who shall be parties hereto, and whose debts existed at the time each and every or any of said dividends were declared and paid; that said directors be adjudged to pay all debts of said bank now existing, which also existed at the time each and every or any of said dividends were declared and paid."

The complaint, as to the matter there referred to, was included in the unqualified indorsement which we have before quoted, wherein this court, by Mr. Justice ORTON, said that the pleading, by the argument of counsel in support thereof, stood completely vindicated in all particulars; that the nature of the suit, in view of the statute and the clear statutory and common-law liability of the directors and stockholders of an insolvent banking corporation, requires a complaint sufficiently broad and comprehensive to draw to the court, in a single controversy, all of the causes for complaint in which the creditors of the bank are interested. "This suit," said the court, "is exclusive of all actions on behalf of the creditors of such an insolvent bank, and all the creditors are compelled to seek their remedy therein; and if there is any liability of the directors, stockholders, or officers of the bank *to the bank or to its creditors, 'in any event or contingency,' such liability must be enforced, it at all, in this one suit.*" Careful attention to the obvious meaning of the language, "liability of the directors, stockholders, or officers of the bank to the bank or to its creditors," would have avoided the mistake made by the

appellant's counsel in *Killen v. Barnes,* 106 Wis. 546, 82 N.
W. 536, of confusing liabilities of officers, directors, and
stockholders as such, to a bank or its creditors, with mere in-
dividual common-law liabilities of such officers, directors, and
stockholders to individual creditors, not necessarily dependent
upon the former's relation to the corporation, such as a liabil-
ity for deceit. A liability to the bank, within the rule, is any
liability of the persons named, legitimately a part of the trust
property of the corporation as between the bank and its offi-
cers or the bank and its creditors; and liabilities to creditors
means liabilities to them generally or to a class of them.

Complaint is made of the finding that the capital stock of
the bank was not fully paid in when the dividends were de-
clared or thereafter. It is in effect admitted that such find-
ing is right if merely giving a note for a stock subscription is
not a paying in of capital within the meaning of the statute.
Counsel for appellant contend that it is. *Clark v. Farring-
ton,* 11 Wis. 306, is confidently cited to support that view.
The question there was not whether the acceptance of a note
of a subscriber for stock in a corporation or to apply on his
subscription is a payment, but whether a note so accepted and
the subscription for stock are valid,—a far different question
from the one we are called upon to decide. It may well be
that a note so taken is enforceable, and yet that it is not a
payment in the sense of being an addition to the actual capital
of the corporation, or in any other sense. *Blunt v. Walker,*
11 Wis. 334, is also cited by counsel. That case seems to de-
cide altogether too much for the safety of appellant's position.
It is there distinctly held that the mere acceptance of the
note of a subscriber for stock to apply upon his stock subscrip-
tion does not constitute payment; that while the transaction
is valid, the note is not a payment for the stock, but a mere
evidence of the debt incurred by the subscription and of a con-
tract postponing payment of such indebtedness till the due
date of the note. That is as far as this court has ever gone.

There are many decisions elsewhere to the effect that the indebtedness created by a subscription for stock in a corporation survives the mere giving of a note therefor. We cite the following: *Moses v. Ocoee Bank,* 69 Tenn. 398; *Sawyer v. Hoag,* 17 Wall. 610; 2 Thomp. Corp. § 1657, and cases cited. The doctrine laid down in the above citations is correctly indicated by the text from Thompson, as follows:

"The subscriber does not, of course, pay for his shares by merely giving his written promise to pay, e. g., his promissory note,—at least unless such be the agreement and intention of the parties, and then the question would arise as to the power of the directors or managers of the corporation to make such an agreement."

The legal effect of the federal case cited is that stock cannot be considered full paid as regards the rights of creditors, merely because the corporation, with or without an agreement to that effect, accepts the subscriber's promissory note for the amount of his subscription. We have no hesitancy in deciding that such must have been the legislative purpose in enacting sec. 1765, Stats. 1898. The purpose was to protect creditors. If stockholders can avoid its effect by giving their promissory notes for subscriptions for stock, by changing the mere evidence of their indebtedness, leaving the condition of the corporations as regards ability to pay its creditors the same as before, a very convenient way exists to enable corporations to pay dividends without any capital having been paid in, regardless of consequences. A construction of the statute that would permit such a practice, it seems, would convict the legislature of putting upon the statute books an absurd piece of legislation. The words "capital stock fully paid in" contemplate an actual payment of the subscription, not the mere giving of a promise to pay it. It need not necessarily be paid in money, but it must be paid, not merely promised to be paid,—the liability to the corporation be actually extinguished by an addition to its assets of either money or property of a money value, equivalent to the subscription indebt-

·edness. Leaving out of view the value of the subscription lia-
bility as an asset of the corporation and 'of the stock as an
asset of the subscriber, payment of capital to the corporation
means adding something thereto that will make the corpora-
tion, to the extent of the liability extinguished, richer than
before, and a subscriber for stock correspondingly poorer.

The third, fourth and fifth assignments of error may be
considered together. They are as follows: *third,* the trial
court was wrong in holding that there were no net profits out
of which dividends could have been paid without impairing or
diminishing the capital stock; *fourth,* in holding that each of
the directors knew of that fact when the dividends were de-
·clared; and *fifth,* in holding that defendant *Brewster* partici-
pated in the payment of the dividend of July 2nd, 1894.
Such assignments of error really all fall with the first, so far
as they relate to *Brewster,* the only defendant here. His lia-
bility to creditors under sec. 1765, so far as adjudged, became
fixed by the payment of the dividend of July 2, 1894, whether
he assented thereto or not by actually participating in the pro-
ceedings declaring it, since it was paid with his sanction, as
evidenced by his participating in the benefit.

Counsel seem to suppose that, essential to his liability, in
addition to the fact that the capital of the corporation had
never been fully paid in, was insolvency of the bank, concur-
ring with want of reason on his part to believe there were
sufficient net profits properly applicable thereto to pay the
dividend without impairing or diminishing the capital. Not
so. The language of the statute as to such element, in con-
nection with the words immediately preceding the same as to
paying dividends before the capital of the corporation shall
have been fully paid in, it seems, will not reasonably permit
of such a construction. The two elements plainly have no
conjunctive relation to each other. The first element refers
to one prohibited act, and the second in a disjunctive sense to
another. That such is the meaning which the legislature in-

tended to convey is shown by referring to the law (ch. 59, Laws of 1893), which the revisers intended to embody in the statute without change. They evidently made a studied effort to drop out of the law of 1893 all unnecessary words, supplying their places, when necessary to preserve the sense, by grammatical points. The following is that part of such chapter material to this discussion:

"If the directors of any corporation shall pay any such dividend before the capital stock is fully paid in, *or shall pay any such dividend* when the corporation is insolvent, or in danger of insolvency, not having reason to believe that there were sufficient net profits properly applicable thereto to pay the same without impairing or diminishing the capital, they shall be jointly and severally liable to the creditors of the corporation at the time of declaring such dividend to the amount of their debts, provided," etc.

The revisers eliminated the words "or shall pay any such dividend" where they occur after the words "fully paid in," and also eliminated the comma after the word "insolvent," supposing, evidently, that by treating the condition as regards directors when a corporation is insolvent and that when it is in danger of insolvency in legal effect the same, and following that with the provision as to knowledge and eliminating the words "shall pay any such dividend," the whole would not be read conjunctively with the words "fully paid in," but that the eliminated element would, by implication, be deemed repeated. We must admit that the revisers dangerously sacrificed clearness to brevity. Conciseness in a law is a valuable feature, but clearness is its crowning merit. We venture to say that the literary merit of the section might have been improved at points that were overlooked without impairing it as to clearness, and that it would have been better to have trimmed it with a less liberal hand. When we look to the penal clause of the section alone, the meaning which appellant's counsel attribute thereto would, if adopted, as before

indicated, convict the legislature of an absurd piece of legislation. If the two elements, payment of dividends before the capital stock is all paid in and payment when the corporation is insolvent or in danger of insolvency, go together, then it is competent for a corporation to pay dividends at any time regardless of whether they have any capital or not, so long as they have sufficient assets to meet their liabilities, strictly so called. The purpose of the legislation undoubtedly was to render it reasonably safe, so far as practicable, to extend credit to corporations. With that view, two conditions precedent to their right to declare dividends were created: first, payment into the corporation of its authorized capital; second, solvency so apparent as to leave the directors no reasonable ground to believe that the situation is otherwise. The words "impair or diminish the capital," in connection with the words "not paid in," evidently refer to so changing the situation as to capital after it has once been paid in, that it, together with the net profits after paying the dividends, will not be sufficient to discharge its stock liabilities if necessary and be applicable to that purpose. That seems reasonably plain, looking to the penal clause by itself. It is unmistakable when that is read in connection with the prohibiting part of the section. See the two parts thereof material to the point under discussion, with the words omitted in the revision after the words "fully paid in," in place:

"No dividend shall be paid to any stockholder of any corporation until the capital stock *has been* [shall have been] fully paid in, and no dividends shall thereafter be declared or paid by the directors of any corporation except out of the net profits properly applicable thereto and which shall not in any way impair or diminish the capital; . . . and if the directors of any corporation *shall pay* [pay] any such dividend before the capital stock *is* [shall have been] fully paid in [or pay any such dividend] when the corporation is insolvent or in danger of insolvency, not having reason to

believe that there *were* [are] sufficient net profits properly applicable thereto to pay the same without impairing or diminishing the capital, they shall be jointly and severally liable," etc.

Thus, it will be seen, two things are prohibited: first, payment of dividends before the capital stock shall have been fully paid in; second, payment of dividends thereafter, except under certain conditions. The penal clause is made to exactly fit those prohibitions.

The sixth assignment of error deals with the subject of whether the bank was insolvent to *Brewster's* knowledge when the dividend was declared material to his liability adjudicated. It is a sufficient answer to that to say that, however the fact involved should have been decided, since there can be no question, as we have seen, but that when the dividend was declared and paid the capital stock had not been fully paid in and the appellant was a guilty participant in the transaction, he is liable, as adjudged by the court, irrespective of any other ground.

The assignee of the bank obtained a judgment against George W. Douglas on his indebtedness for unpaid subscription for stock. Counsel, by the seventh assignment of error, insist that such circumstance operated to estop creditors of the bank from enforcing the penal liability of appellant under sec. 1765. The reasoning of counsel on that is contrary to *Blunt v. Walker,* 11 Wis. 334, and other cases upon which he relies to sustain the position that the giving of a note for a stock subscription is a payment thereof. It is said that, if the note was not a good payment for the stock, it was void, and the enforcement of it to the extent of putting the same into judgment, made it valid from the beginning, and that, since the assignee stood for the creditors, his enforcement of the note extinguished their right to benefits under sec. 1765 if they previously had any. The law is, as we have seen, that the taking of a note on a stock subscription is

neither a void act nor a payment of the subscription liability. But independently of that, the statute must be taken according to its obvious meaning. For every violation thereof a penalty is provided. Liability for violating the first prohibition cannot thereafter be extinguished by the enforcement of the subscription liability. There is no implied provision that can be read into the statute to the effect that, if the stock subscription liability is extinguished. after a penalty shall have been incurred, dependent at its creation on such liability, that shall *per se* extinguish the penalty. If it were otherwise, appellant could not profit thereby, because, while the right to recover on the subscription liability—notwithstanding the note representing it was unlawfully surrendered—has been asserted, the debt has not been collected, nor any part of it.

By the eighth assignment of error several suggestions are made why the creditors of the bank July 2, 1894, were not entitled to the relief against appellant. All of the reasons suggested in support thereof have been sufficiently met in what has been said, except a suggestion that sec. 1765 does not apply to banking corporations, hence the recovery based thereon cannot stand; that sec. 40, p. 1535, Stats. 1898, covers the same subject as sec. 1765, and that inasmuch as it is a part of the act which specializes banking corporations, it should be held to be exclusive. The answer to that is that sec. 40, p. 1535, does not create any liability of directors for improperly paying dividends. The two sections, in the main, refer to different subject matters. Therefore there is no good reason why the general language of sec. 1765 should not be held to include banking as well as all other corporations. It has always been regarded here as a law of universal application. *Hurlbut v. Marshall*, 62 Wis. 590, 22 N. W. 852, was a suit like this, and one of the most significant liabilities which the plaintiff sought to enforce was under sec. 1765. That is clearly indicated in the argument of counsel printed

in the report of the case in volume 62 of our Reports at page 600, and in the statement of the allegations of the complaint in the opinion of the court on page 602. The court, by Mr. Justice Orton, said of the complaint and the argument in support of it, after stating the various liabilities sought to be enforced:

"The prayer for relief is appropriate to these several causes of complaint.

"The brief of the learned counsel of the respondent is elaborate and very able, and should be preserved in the report of the case as a complete vindication of the complaint in all particulars."

The effect of the argument on the particular point before us was that in a constitutional sense the subject covered by sec. 1765 is not appropriate to a banking law. It is a mere remedial provision to protect the public from the frauds and wrongs of officers and others in conducting corporate affairs. Though not enacted according to the requirements of the constitution as regards banking laws, it applies to banking corporations as well as all others. In *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536, as a reference to the briefs of counsel will show, the point was urged upon the attention of the court that sec. 1765, Stats. 1898, does not apply to banking corporations. The opinion does not show, except inferentially, that it was considered and the proposition negatived by the decision. That is probably attributable to the fact that the court considered the matter foreclosed by *Hurlbut v. Marshall* and adherence thereto since it was decided. The logical effect of the decision in *Killen v. Barnes,* as counsel for appellant seem to understand, and as the matter was understood when the case was decided, is against their position.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied April 17, 1903.