PETTINGILL and others, Respondents, vs. STATE MARKETING ASSOCIATION, INC., and others, Defendants: WESTFAHL and others, Defendants and Appellants.

*May 3—June 4, 1929.*

202

206

For the appellants there was a brief by *Shannon & Higgins* of Kenosha, *Herman A. Mosher* and *Rubin, Zabel & Rouiller,* all of Milwaukee, of counsel, and *Reynolds & Dwyer* of Green Bay, attorneys, and oral argument by *Mr. Frank J. Shannon* and *Mr. Mosher.*

For the respondents there was a brief by *A. G. Schwefel* and *Reginald I. Kenney,* both of Milwaukee, attorneys, and *W. G. Cavanaugh, Jr.,* of counsel, and oral argument by *Mr. Kenney* and *Mr. Schwefel.*

OWEN, J. So far as this action seeks to enforce the liability of stockholders and officers of the State Marketing

Association, it is in accordance with the established practice of this state, which requires that the whole subject of winding up a corporation, settling with its creditors, and distributing its assets shall be brought before the court as one cause of action. In such an action all creditors of the corporation are deemed parties plaintiff, and all stockholders whose liability upon subscriptions to stock is sought to be enforced, and who are within the jurisdiction of the court, must be made parties defendant. *Hurlbut v. Marshall,* 62 Wis. 590, 22 N. W. 852; *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922; *Williams v. Brewster,* 117 Wis. 370, 93 N. W. 479. We know of no decision, however, which holds that the ordinary debtor of the corporation is a proper party defendant in such a suit. The stockholders of the corporation are required to be joined as parties defendant because there is a community of interest between them, and the stockholder who pays more than his proportionate share necessary to discharge the debts of the corporation is entitled to an accounting with the stockholders who have paid less than their proportionate shares, all of which is accomplished in one suit to wind up the affairs of the corporation.

Counsel for respondents appreciate this situation and take the position that the subscribers to the debenture bonds stand in the relation of, and in fact are, stockholders in the various corporations which seem to have been rather successfully merged in the State Marketing Association. They cite and rely upon *In re Fechheimer Fishel Co.* 212 Fed. 357; *Cass v. Realty Securities Co.* 148 App. Div. 96, 132 N. Y. Supp. 1074; *Armstrong v. Union Trust Co.* 248 Fed. 268; and Fletcher on Corporations, § 3631, in which it was held that the holders of the debenture bonds of the corporation acquired the rights and assumed the liabilities of stockholders of the corporation by virtue of the contract embodied in the debenture. Conceding the soundness of these decisions, it by no means follows that all holders of debenture obligations acquired the status of stockholders of the

corporation, and we may accept the doctrine of those cases without compelling the conclusion here that these various debenture holders acquired the status of stockholders in any of these related corporations. In the case of *In re Fechheimer Fishel Co.* 212 Fed. 357, it was said:

"The distinguishing feature of a bond is that it is an obligation to pay a fixed sum of money with stated interest. The distinguishing feature of stock is that it confers upon its holder a part ownership of the assets of the corporation, and gives him a right to participate in the management of the corporation and to share in the surplus profits, and on dissolution to share in the assets which remain after debts are paid."

The subscription agreement set forth in the statement of facts, which, while not exactly the same, is quite similar to the other subscription agreements, signally fails to invest the subscriber with any of the distinguishing rights and privileges of stockholders. He acquires no voice in the management of the affairs of the corporation, he acquires no interest in its property, he acquires no right to share in the surplus profits or in the assets of the corporation after debts are paid. He simply agrees to buy a debenture of the corporation. The debenture is spoken of as a participating debenture. The nature and extent of participation is not specified in the form set forth in the statement of facts. However, in others we find this provision:

"I also understand that the corporation will apply the gains and profits made each year from the investments and accretions to the corporate property to the payment during the year out of said gains and profits to the holders of debentures or profit-sharing dividends up to an amount equal to not less than eight per cent. of the par value of such debentures before any of said gains or profits are placed in the surplus fund or otherwise accumulated for the extension or increase of said business."

This amounts to no more nor less than that the corporation will pay its interest on these debentures out of its

profits before declaring any dividends, which is its plain legal duty in the premises in the absence of any agreement with the debenture holder. At most, this provision gives the debenture holder a lien upon the earnings of the corporation equal to the amount of the interest upon the debenture. But its efficacy as additional security is of exceedingly doubtful value. Without further comment, we hold that these debentures, when fully paid up and issued, constituted between the corporation and the subscriber or the debenture holder the simple relation of debtor and creditor, and the subscription agreement, until fully paid, is nothing more nor less than an executory contract whereby the subscriber agrees to purchase the participating debenture bonds of the corporation, and the respective rights of the parties must be predicated upon that basis.

Whether the delinquent subscribers are debtors or creditors of the corporation, whether they have breached their contracts, or whether the insolvency of the corporation has placed it beyond the power of the corporation to carry out its part of the agreement, we shall not now decide. Suffice it to say that the amount unpaid on these subscriptions is not a trust fund such as unpaid subscriptions to capital stock which may be reached in a creditors' action.

It is further claimed that there is a community of interest between the subscribers to these debentures which gives rise to the right to an accounting between them, for which reason their presence as parties to this action is proper. It is said that each subscriber subscribed with the knowledge that 350 of these debentures were to be sold in his community, and that the agreement of each subscriber was a consideration for the agreement of every other subscriber so that the contract of subscription became mutual agreements between the subscribers. To this we cannot accede. There was no mutual undertaking here on the part of the subscribers. They engaged in no joint enterprise. They sought to accomplish nothing of mutual interest. They did

not initiate an undertaking which would place a co-operative store in their community, and work together for the accomplishment of a common purpose. This corporation was organized under the general incorporation laws. Having organized, it undertook to borrow money upon its debenture bonds. In the accomplishment of this purpose it made application to various persons who each had an individual or selfish interest, or thought he did, in the establishment of a co-operative store in his or her community. The agreement of subscription was an individual contract between the subscriber and the corporation. The subscriptions were not joint subscriptions and there is nothing to indicate that the subscription on the part of one constituted a consideration for the subscription of any other. They no doubt desired the establishment of such a co-operative store, and each subscriber was willing to promote the enterprise to the extent of loaning the corporation a certain amount of money. But the enterprise was the enterprise of the corporation. It was not the joint enterprise of those who subscribed for the bonds. We see nothing in the transaction indicating a community of interest or joint adventure on the part of these subscribers, consequently there is no foundation for an accounting between them. While those who have paid their subscriptions, and possibly those who have not, have a claim against the corporation and are proper parties plaintiff in this action, there is no reason for making those who have not paid their subscriptions parties defendant, and as to them there is a misjoinder of causes of action in this complaint. The demurrer on the part of the defendants who have not fully paid their subscriptions to the debenture bonds should have been sustained on the ground that several causes of action had been improperly united.

This makes it unnecessary to consider whether the complaint states facts sufficient to constitute a cause of action against the defendants who are delinquent upon their subscription contracts. We withhold a decision upon that ques-

tion until it shall have been tersely and clearly presented in an individual action.

*By the Court.*—Order reversed, and cause remanded with instructions to sustain the demurrers of those defendants who have not paid their subscriptions in full, on the ground that several causes of action have been improperly united.