TURNER, Respondent, vs. GOETZ, Trustee in Bankruptcy, imp., Appellant.

*May 8—October 14, 1924.*

*Corporations: Power to purchase own shares: What law governs: Franchise or charter: Right of corporation to be and to do: Control by state other than that creating corporation.*

1. In the absence of a statute to the contrary, a corporation may purchase and dispose of its own stock provided the same is done in good faith and without intent to injure creditors and they are in fact not injured thereby.  p. 510.

2. The charter or franchise of a corporation consists of two parts: its right to be or exist as a corporation and its right to do certain things in the exercise of powers conferred upon it by the state of its creation.  p. 511.

3. At common law the formation of corporations by persons was prohibited. They may come into existence only on such terms as the legislature of the state of their creation may prescribe; and wherever they go to do business, their existence is referable to the laws of such state.  p. 511.

4. The courts of one state have no jurisdiction to adjudge a forfeiture of the franchise of a foreign corporation.  p. 512.

5. The powers of a Delaware corporation in respect to purchasing its own stock are to be determined in accordance with Delaware law and not by the laws of Wisconsin, in which it is doing business, after application made under sec. 1770*b*, Stats. 1921, which does not require a foreign corporation to re-incorporate; and since under the Delaware law a corporation cannot purchase its own stock except out of surplus, a contract made with a stockholder in Wisconsin to purchase stock at the time the capital of the corporation is impaired is void, although as to Wisconsin corporations the rule is as stated in paragraph 1, *supra.*  p. 516.

APPEAL from a judgment of the circuit court for Ozaukee county: C. M. DAVISON, Circuit Judge. *Reversed.*

The Turner Manufacturing Company is a corporation organized under the laws of the state of Delaware, authorized to do business as a foreign corporation in the state of Wisconsin. On the 14th day of May, 1919, the corporation entered into a contract with the plaintiff, one of its stock-

holders, for the purchase by the corporation of certain shares of the capital stock of the corporation for $36,400, on which there remains due $30,760. This action was begun to recover that amount from the corporation. The plaintiff was the vice-president and general manager of a former corporation and acquired the stock which was the subject of the contract by transfer of the assets of the old corporation for stock in the new corporation.

The answer sets up the fact that the transaction was induced by fraud of the plaintiff and also that the contract to purchase is void under the laws of Delaware, because under the law of that state the corporation has no power to purchase its own shares except out of surplus; that at the time of the purchase the capital of the corporation was impaired and was further impaired by the purchase.

The trial court found against the defendant on the issue of fraud, made no finding as to whether or not the capital of the corporation was impaired, but found that the corporation was solvent at the time of the making of the contract, and concluded that the validity of the contract was to be determined by the laws of the state of Wisconsin, where the contract was made, instead of the laws of the state of Delaware, in which the company was organized. From the judgment in favor of the plaintiff the defendant *Goetz,* trustee in bankruptcy, appeals.

For the appellant there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish,* of counsel, all of Milwaukee, and oral argument by *Irving A. Fish.*

*Clifton Williams* of Milwaukee, for the respondent.

The following opinion was filed June 3, 1924:

ROSENBERRY, J. There is really but one question to be determined upon this appeal, as it appears almost without dispute that the capital of the corporation was at the time of the making of the contract impaired, and that is, Is the right

of the corporation to make a contract for the purchase of its stock to be determined under the laws of the state of Wisconsin, the place where the contract was made, or under the laws of the state of Delaware, the state of its creation?

Sec. 19 of art. I of the Delaware general corporation law (Rev. Code 1915, § 1933) reads as follows:

"Every corporation organized under this chapter shall have the power to purchase, hold, sell and transfer shares of its own capital stock; provided that no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation."

The language of this section has been interpreted by the courts of Delaware in *In re International R. Co.* 5 Boyce (28 Del.) 261, 92 Atl. 255, where it is said:

"In the statute the impairment of the 'capital' of the company is mentioned. As here used, this means the reduction of the amount of the assets of the company below the amount represented by the aggregate outstanding shares of the capital stock of the company. In other words, a corporation may use only its surplus for the purchase of shares of its own capital stock."

The rule is otherwise in the state of Wisconsin, where it is held that, in the absence of any statute to the contrary, a corporation may purchase and dispose of its own stock provided the same is done in good faith without intent to injure creditors and they are not in fact injured thereby. *Shoemaker v. Washburn L. Co.* 97 Wis. 585, 73 N. W. 333; *Marvin v. Anderson,* 111 Wis. 387, 87 N. W. 226.

It is contended, however, that when the defendant corporation made application to do business in this state under the provisions of sec. 1770*b,* Stats., it was thereby in effect re-incorporated, and that its powers, duties, and liabilities are therefore identical with those of Wisconsin corporations—no more nor no less. This argument rests upon two propositions: first, the language of sec. 1770*b;* and second,

the proposition that a corporation cannot get out of the state of its creation.

(1) The applicable part of sec. 1770*b,* being sub. 10, reads:

"All foreign corporations and the officers and agents thereof doing business in this state, shall be subjected to all the liabilities and restrictions that are, or may be imposed upon corporations of like character, organized under the laws of this state, and shall have no other or greater powers. . . ."

The charter or franchise of a corporation consists of two parts: first, its right to be or exist as a corporation; and second, its right to do certain things in the exercise of powers conferred upon it by the state. *Lord v. Equitable L. Assur. Soc.* 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. N. S. 420.

A corporation having the right to exist is also granted the right to do certain things and exercise certain powers. This is sometimes referred to as its right to do as distinguished from its right to be. At the common law the formation of corporations by persons was prohibited. Therefore the right of citizens to associate themselves together for the purpose of forming a corporation is in the nature of an exception or exemption from the general rule of the common law. *State ex rel. Bradford v. Western I. C. Co.* 40 Kan. 96, 19 Pac. 349, 10 Am. St. Rep. 166.

Therefore corporations may come into existence only upon such terms as the legislature of the state of their creation may prescribe. Having been brought into existence under the law of a sovereign state, they become artificial persons. They may move from place to place within the state, may transact business in other states and other countries; subject, however, to such limitations as may be imposed by the states or countries in which they seek to do business, as they have not the right of natural persons. Wherever they may go, their existence, however, is referable

to the laws of the state of their creation. This is demonstrated by the fact that courts of one state have no jurisdiction to adjudge a forfeiture of a foreign corporation's franchise. *Society, etc. v. New Haven,* 8 Wheat. 464; *Edwards v. Schillinger* (245 Ill. 231, 91 N. E. 1048) 33 L. R. A. N. S. p. 895, at p. 907, and note.

Does the law of this state require a foreign corporation coming into this state to re-incorporate? We think not. The whole purpose of sec. 1770*b* is to prescribe the conditions upon which foreign corporations are permitted to transact business within this state. It is assumed that the corporation applying has a corporate existence derived under the laws of some other state, and that what it proposes to do and what it is to be permitted to do is to transact business as a corporate entity existing under the laws of another state. What is referred to in sub. 10, sec. 1770*b*, Stats., above quoted, relating to liabilities and restrictions and providing that the corporation shall have no other nor greater powers, relates to the matter of transacting business, not to the internal organization of the corporation, which relates to its corporate existence and under and by virtue of which that corporate existence is maintained.

In *Paul v. Virginia,* 8 Wall. 168, it is said:

"Now, a grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created."

With this quotation as a basis, the argument is made that a corporation exists for no purpose beyond the boundaries of the state creating it. In the same paragraph the court also said:

"Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of

its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

Consideration of this language indicates the fallacy in the argument of counsel. While Wisconsin may refuse to a corporation organized under the laws of Delaware the right to do business in the state of Wisconsin, when, under the law of Wisconsin, the Delaware corporation is permitted to do business here, the corporate entity created by the law of the state of Delaware is recognized in Wisconsin and it is admitted to this state. It is a corporation of the state of Delaware that is admitted to transact business here, and it is not required to become a corporation of the state of Wisconsin. In the transaction of that business it is subject to all the liabilities and restrictions of Wisconsin corporations and has no other or greater powers than like Wisconsin corporations have. Being, however, a Delaware corporation, it is, so far as its right to existence is concerned, dependent upon the laws of that state. It is not re-created here. If the argument of counsel for respondent is sound and a Delaware corporation should do business in thirty states, there would be thirty different corporations having thirty different powers, duties, and liabilities upon which its right to be would depend, and no one could know what the power and authority of the corporation was with respect to those matters which relate to its existence as a corporation. One of the conditions under which the incorporators were permitted to bring the Delaware corporation into existence was that the corporation should not have the right to purchase its own stock except out of sur-

plus.   It is highly important to the stockholders of the
Delaware corparation as well as to its creditors to know
whether or not its stock may be retired, the corporate cap-
ital impaired, or whether the capital must be maintained
unimpaired.   This it could never know if it had to look at
the contracts of the company and the law in thirty different
states to ascertain whether or not the right to contract ex-
isted.   If a corporation organized in Delaware, where it is
forbidden to impair its capital in the purchase of its own
stock, may come to Wisconsin and there legally do that
which it is forbidden to do in Delaware, neither the stock-
holders nor the creditors could have any assurance that at
any particular time the corporate existence was not im-
periled.   It is claimed that the clause in the statute, "shall
have no other or greater powers," means that the powers of
the foreign corporations admitted to do business here must
be the same or identical with that of Wisconsin corporations.
It is quite clear from our decisions that a Wisconsin cor-
poration would not have that power if it were otherwise
provided in its articles.   It is a power which a Wisconsin
corporation may exercise in the absence of a statutory regu-
lation and a limiting paragraph in its articles.   Wisconsin
corporations may or may not have that power.

A Wisconsin citizen transacting business with a Delaware
corporation authorized to transact business in this state is
dealing not with a Wisconsin corporation but with a cor-
poration of the state of Delaware.

The argument of counsel has been effectually and con-
clusively disposed of by *Canada Southern R. Co. v. Geb-
hard,* 109 U. S. 527 (3 Sup. Ct. 363), at p. 537, where it is
said:

"A corporation 'must dwell in the place of its creation,
and cannot migrate to another sovereignty' (*Bank of Au-
gusta v. Earle,* 13 Pet. 588), though it may do business in
all places where its charter allows and the local laws do not
forbid.   *Railroad Co. v. Koontz,* 104 U. S. 12.   But wher-

ever it goes for business it carries its charter, as that is the law of its existence (*Relf v. Rundel,* 103 U. S. 226), and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere. A corporation of one country may be excluded from business in another country (*Paul v. Virginia,* 8 Wall. 168), but, if admitted, it must, in the absence of legislation equivalent to making it a corporation of the latter country, be taken, both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation. Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere."

(2) The second proposition has been answered by what has been said in regard to the first.

We conclude that the purpose and object of sub. 10, sec. 1770*b*, is to limit a foreign corporation, in the exercise of its power to do business with citizens of this state, to the doing of those things which domestic corporations of the

same character may do, and in that respect a foreign corporation shall have no other or greater powers than those enjoyed by domestic corporations. It does not seek to reincorporate a foreign corporation or to change or alter the nature of its corporate existence or the conditions upon which that depends, but to limit its power to do within this state, in the transaction of business with third parties, the same things that a domestic corporation of like character may do. *Thronson v. Universal Mfg. Co.* 164 Wis. 44, 159 N. W. 575. The powers of the defendant Delaware corporation in respect to purchasing its own stock are to be determined in accordance with the law of the state of its creation. No other questions are raised.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

ESCHWEILER, J., dissents.

DOERFLER, J., took no part.

The respondent moved for a rehearing.

In support of the motion there was a brief by *Lawrence A. Olwell, Walter H. Bender,* and *Clifton Williams,* all of Milwaukee.

In opposition thereto there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish,* of counsel, all of Milwaukee.

The motion was denied, with $25 costs, on October 14, 1924.