KOEPPLER, Respondent, vs. CROCKER CHAIR COMPANY, Appellant.

*November 4, 1929—February 4, 1930.*

478

For the appellant there was a brief by *Collins & Collins* of Sheboygan, and oral argument by *William B. Collins*.

For the respondent there was a brief signed by *James E. Coleman* of Milwaukee.

The following opinions were filed December 3, 1929:

FOWLER, J.   It is contended by the defendant that under the articles of incorporation as amended in 1924 after plaintiff's certificates were issued to him, the preferred stock of the corporation became payable only at call of the defendant and that by such amendment the plaintiff was deprived of whatever right he would otherwise have to recover on his certificate.   It seems plain, however, that the defendant could not affect plaintiff's right by any action it or its stockholders might take without his consent or participation.

The next question for consideration in orderly procedure is whether the defendant's certificates were evidences of indebtedness, as if they are the plaintiff is a creditor and entitled to recover.   The plaintiff is either a stockholder or a creditor.   He cannot be both.   Designating securities as preferred stock does not determine their real nature.   If the circumstances of their issue and their purpose and the articles pursuant to which they were issued show that the transaction was a loan, calling them preferred stock does not change them.   The definitions given by the courts do not

aid much in determining whether they are evidences of debt or capital stock. As good a definition as any for classification of securities is that given by Mr. Justice OWEN in *Pettingill v. State Marketing Asso.* 199 Wis. 200, 225 N. W. 834. He quotes:

"The distinguishing feature of a bond [or other evidence of debt] is that it is an obligation to pay a fixed sum of money with stated interest. The distinguishing feature of [capital] stock is that it confers upon its holder a part ownership of the assets of the corporation and gives him a right to participate in the management of the corporation and to share in the surplus profits, and on dissolution to share in the assets which remain after the debts are paid."

These certificates satisfy the calls of the definition of bonds, if we consider dividends as interest, and they do not confer upon the holders any right to surplus profits or to share in the management of the business. They do, however, confer on the holder the right to share in the assets of the corporation on dissolution that remain after the debts are paid, and they therefore confer on the holder part ownership of the assets of the corporation. Capital stock, speaking generally, constitutes a fund to which the creditors of a corporation have a right to resort for payment. Credit is extended in reliance on the amount of the corporate stock outstanding. The articles of incorporation of the defendant company in force at time the plaintiff's stock was issued expressly declared that the authorized capital stock of the corporation was $1,100,000, $500,000 common and $600,000 preferred stock. Credit was invited on the assumption that the preferred stock was capital, and we are clear that it must be so considered.

Being capital stock, the right of the corporation to retire or redeem the certificates depends on the circumstances. Capital stock being a trust fund out of which creditors are entitled to be paid, the general rule is that a corporation has no right to buy in its own stock and thereby deplete this fund. Our court does not adhere to this rule to its full

extent, but allows such purchase if it does not operate to deplete the fund available to creditors to such an extent as to prejudice their rights. *Gilchrist v. Highfield,* 140 Wis. 476, 123 N. W. 102; *Atlanta & W. B. & C. Asso. v. Smith,* 141 Wis. 377, 123 N. W. 106; *Rasmussen v. Schweizer,* 194 Wis. 362, 216 N. W. 481. Agreements of a corporation to repurchase its own stock are valid and will be enforced if made in good faith and without intent to injure creditors, and they do not in fact have such effect. *Strait v. Northwestern S. & I. Works,* 148 Wis. 254, 134 N. W. 387; *Turner v. Goetz,* 184 Wis. 508, 199 N. W. 155. There is no difference in principle between contracting to repurchase common stock on a definite contingency and to redeem or pay preferred stock at a definite time. The general rule is that a corporation cannot give holders of preferred stock any preference, either in respect of payment of principal or dividends which will be superior to the rights of creditors, unless by virtue of express statutory authority, and in the absence of such authority any attempt to do so is contrary to public policy and void. 6 Fletcher, Corporations, sec. 3634; 2 Clark & Marshall, Corporations, p. 1314. In cases so holding, the rights of creditors were generally involved and in all such the contract has been held void as to creditors. The decisions generally are to the effect that such provisions are void as against public policy if construed as giving to the holder of preferred stock right of recovery in preference to creditors; but the provisions are generally construed as subject to the implied reservation that redemption may be made only in case the rights of creditors are not thereby prejudiced, and the stock is held valid as to the corporation and consenting stockholders if creditors' rights are not prejudiced by the payment. *Smith v. Southern Foundry Co.* 166 Ky. 208, 179 S. W. 206; *Spencer v. Smith,* 201 Fed. 647; *Guaranty T. Co. v. Galveston City R. Co.* 107 Fed. 311; *Warren v. Queen & Co.* 240 Pa. St. 154, 87 Atl. 595; *Hamlin v. Toledo, St. L. & K. C. R. Co.* 78 Fed. 664;

*Reagan Bale Co. v. Heuermann* (Tex. Civ. App.) 149 S. W. 228; *Ellsworth v. Lyons,* 181 Fed. 55; *Westerfield-Bonte Co. v. Burnett,* 176 Ky. 188, 195 S. W. 477; *Weaver Power Co. v. Elk Mountain Mill Co.* 154 N. C. 76, 69 S. E. 747. Sec. 182.08, Stats., inferentially validates redemption of preferred stock by providing that whenever stock is diminished by any corporate vote the holder shall be liable to existing creditors to the amount refunded, and that the holders so voting shall be jointly and severally liable to any creditor whose debt shall remain unpaid for the whole amount refunded, subject to *pro rata* contribution from other holders receiving a refund.

It thus appears that a holder of preferred stock such as plaintiff's, situated as is plaintiff, is entitled to recover if the value of the corporation's assets exceeds its liabilities. In this case there is no proof that such is the fact. Such proof as there is was introduced by defendant and tends to show insolvency. The defendant has made no profit for many years out of which to pay even dividends, to say nothing of redeeming stock, from which it may fairly be inferred that it has no surplus, and in 1924 the defendant was on the verge of forced liquidation by reason of its large indebtedness. It seems a fair inference that the defendant did not go further with its proof for fear of inducing bankruptcy proceedings. If the burden were on the defendant to show insolvency the proof would perhaps be insufficient to establish it, but we consider that the burden is on the stockholder claiming the right to have his stock redeemed to show that redemption can be made without prejudice to the rights of creditors. The plaintiff has not so shown. If he may recover so may all holders of preferred stock who did not consent to the amendment of the articles of the corporation. The record does not show how many such holders there are, if any besides the plaintiff, but irrespective of that we are of opinion that the plaintiff has not established the facts necessary to his recovery. It is true that neither cred-

itors nor other stockholders whose rights may be affected are parties to this suit. But it is not necessary that they should be. Several of the cases above cited involved bankruptcy or other liquidation proceedings, but in others, as *Smith v. Southern Foundry Co., Warren v. Queen & Co., Reagan Bale Co. v. Heuermann,* and *Westerfield-Bonte Co. v. Burnett, supra,* action for recovery was brought by the stockholder against the corporation. Such was the situation also in *Booth v. Union Fibre Co.* 142 Minn. 127, 171 N. W. 307, and 137 Minn. 7, 162 N. W. 677. When the *Booth Case* was first before the court, the court held on demurrer to the complaint that, the rights of creditors not being involved, the complaint stated a cause of action. There was no allegation of ability of the corporation to pay without affecting creditors' rights, and the fact of insolvency was there pleaded and on trial proved in defense. Under this practice it might be inferred that insolvency or inability to pay without detriment was an affirmative defense, although the point was apparently not considered; but in *Smith v. Southern Foundry Co., supra,* it was squarely held that the complaint, silent as to solvency and ability to pay without prejudice to creditors, did not state a cause of action, and in this view we concur.

. The above disposes of this case, but we feel constrained to suggest that the issue of preferred stock such as is here involved is likely to operate as a constructive fraud upon persons who purchase relying on their right to have it redeemed strictly according to the terms of their certificate. While in the absence of a prohibitory statute such certificates, if authorized by the charter of the corporation, are valid as against the corporation and the holders of common stock unless creditors' rights are involved, they afford a seductive means of securing capital from persons who could not be persuaded to purchase common stock and who would not purchase the preferred if aware that payment on maturity was dependent on the condition that the corporation

could only pay in case the fair value of assets exceeded liabilities. The ordinary individual is prone to accept such certificates at their expressed purport. While his ignorance of the law does not entitle him to payment unless the facts exist that render it permissible, it would seem that the public is at least entitled to such protection as the Blue Sky Law may afford.

*By the Court.*—The judgment is reversed, and the cause remanded with instructions to dismiss the complaint.

OWEN, J. (*concurring*). While I concur in the result reached in this case, I think the opinion should go further and declare agreements embodied in preferred stock certificates to retire the stock at a given time, void *in toto* as against public policy. The reason therefor is well stated in the opinion. Such an agreement in a stock certificate is a trap and a snare for the unwary investor. The rule announced protects the corporation and its creditors, but it denies to the holder of the stock certificate a right which it gives to him by its express terms. He is deluded into the belief that he has a contract and that he has acquired contract rights. It were better public policy to prohibit entirely the issuance of such contracts. In view of the reluctance of the court to go to this extent, I suggest that the matter may well receive the serious consideration of the legislature.

I am authorized to state that Mr. Justice CROWNHART concurs in this view.

On February 4, 1930, a motion for a rehearing was denied, without costs, and the following memorandum was filed:

*By the Court.*—The mandate entered December 3, 1929, is vacated and set aside. The judgment appealed from is reversed, and the cause remanded with directions to grant a new trial herein.