KETTENHOFEN, Trustee, Respondent, vs. STERLING OIL COMPANY and others, Defendants: COSDEN OIL COMPANY, Appellant.

*September 16—December 7, 1937.*

For the appellant there were briefs by *Frame & Blackstone* of Waukesha, attorneys, and *Bertram W. Rosenstone* of Chicago, Illinois, of counsel, and oral argument by *Harvey J. Frame.*

For the respondent there were briefs by *Lockney, Lowry & Hunter* of Waukesha, and oral argument by *Richard N. Hunter* and *J. K. Lowry.*

The following opinion was filed October 12, 1937:

MARTIN, J. In December, 1921, the Sterling Oil Company, a Wisconsin corporation, formerly known as Sterling Service Stations, Inc., proposed to erect a filling station upon a piece of property in the city of Oconomowoc. For the purpose of financing the cost of erecting said station, the company by authority of its stockholders and its board of directors, issued "participating operation certificates," and to secure the repayment of the indebtedness evidenced by said certificates, Sterling Oil Company did, by authority of its stockholders and its board of directors, make, execute, and deliver to the plaintiff, as trustee, its certain mortgage or deed of trust, dated December 29, 1921, wherein and

whereby it covenanted to secure the performance and observance of all covenants, conditions, and agreements in said indenture contained, and granted, bargained, mortgaged, and sold to J. F. Kettenhofen, as trustee, and his successors in trust, the real estate therein described, located in the city of Oconomowoc, "together with the buildings and improvements and including all tanks, pumps and other equipment of the service filling station erected thereon, such conveyance being made for the equal *pro rata* benefit and security of each and every person who may be the holder of any of the bonds or certificates." The trust deed was delivered to Mr. Kettenhofen, as trustee, at the time of the issuance of the certificates. Mr. Kettenhofen accepted the trust, had the deed recorded, and thereafter acted as such trustee in accordance with the terms and conditions of the trust indenture.

The certificate provided that the moneys received from the sale of them should be used exclusively in the building and equipping of the filling station, and if the station was not constructed within one year from the date of the certificate, the $150, deposited by the holder of the certificate, would be refunded by the company with six per cent interest. The purchaser paid the sum of $150 for each "participating operation certificate" and the sum of $150 for one and one-half shares, Class B, nonpar stock. The certificate and stock were sold in units for the sum of $300. The "participating operation certificate" provides:

"He is with —— other certificate holders, to receive one cent for every gallon of gasoline and kerosene sold by Sterling Service Stations, Inc., at a service filling station to be established at Oconomowoc, state of Wisconsin, and five per cent (5%) of the gross sales of all other goods or merchandise from said station, which amounts shall be deposited in the First National Bank of Oconomowoc to the credit of the certificate holders in said station.

"The fund so created shall be divided at the end of each and every month equally among the certificate holders of such

station and such distribution shall continue until such certificate holders shall have received the sum of three hundred dollars ($300) for each certificate *which sum the company guarantees shall be paid on or before ten (10) years from the date hereof.* This sum shall be in full of all profit and interest of every kind and nature and upon completion of the payment thereof all the right, title, and interest of the holder hereof shall cease."

Upon redemption of the participating certificate, the holder thereof retained the one and one-half shares, Class B, non-par stock, in the company.

The trust deed under foreclosure in this action sets out in full the provisions of the "participating operation certificate." The participating certificate contains the further clause:

"It is understood that to secure the moneys paid by each certificate holder and the performance of the agreement herein set forth, the company has caused to be executed to J. F. Kettenhofen as trustee for the certificate holders a deed of trust."

The trust indenture specifically provides that it is given for the purpose of providing security to the several certificate holders, and to secure the performance of the several agreements and obligations of the company with said certificate holders.

It appears that on the 4th day of April, 1931, the defendant, Sterling Oil Company, was adjudicated a bankrupt in the federal court for the Eastern district of Wisconsin; that since the delivery of the deed of trust Sterling Oil Company has paid upon each of the participating certificates the sum of $169; that there remains due upon each certificate $131, or an aggregate of $8,384. On May 12, 1931, the trustee in bankruptcy of Sterling Oil Company conveyed the premises in question to the appellant, Cosden Oil Company. The trustee's deed recites:

"Subject to all legal liens and encumbrances."

The Cosden Oil Company leased the premises to the Pure Oil Company. The trial court found:

"That the rights of the Cosden Oil Company and the Pure Oil Company are subsequent and subordinate to the plaintiff's claim."

Neither the trustee nor any of the certificate holders filed claims in the bankruptcy proceedings of the Sterling Oil Company.

In connection with the reformation of the trust deed the trial court found:

"That the granting clause of said mortgage erroneously conveyed the premises to the First National Bank, instead of Kettenhofen, as trustee, such mistake being a mutual mistake of the parties. That in order to make said mortgage convey the premises described to this plaintiff and to make it conform to the actual intention of the parties, it is necessary that said granting clause should be amended so as to read as follows: . . .'" (By inserting the name of J. F. Kettenhofen instead of the First National Bank of Oconomowoc.)

In this connection, it appears that Mr. Kettenhofen was the cashier of the First National Bank of Oconomowoc; that originally there was some discussion as to the bank acting as trustee. Mr. Kettenhofen suggested that the bank had no trust powers. It was thereupon agreed that Mr. Kettenhofen would then personally act as such trustee. Before the execution of the trust deed, the name of the bank was stricken and Mr. Kettenhofen's name inserted. The correction was not made in the granting clause of the trust deed. The fact that Mr. Kettenhofen's name was inserted as trustee in other parts of the indenture clearly indicates the intention of the parties to name Mr. Kettenhofen as the trustee.

The appellant contends that the acceptance of evidence tending to reform the trust deed, changing the name of the First National Bank of Oconomowoc, as trustee, to Mr. J. F. Kettenhofen, as trustee, was improper. It is conceded that

Mr. Kettenhofen has at all times acted as the trustee. The bank acted merely as a depository for the funds from the service station. Both Mr. Kettenhofen and Mr. Walters, vice-president of the Sterling Service Stations, Inc., testified that originally it was intended that the bank should act as trustee; that upon learning that the bank did not have trust powers, Mr. Walters requested that Mr. Kettenhofen act as trustee individually. Obviously, the insertion of the words "First National Bank of Oconomowoc" in the granting clause of the deed was a clerical error. The trial court properly so found.

The only defense to the foreclosure of the trust deed, as reformed, involves a determination as to the legal status and rights of the certificate holders under their respective "participating operation certificates" and the trust indenture given to secure the performance of all the terms and conditions contained in such certificates. Appellant contends that the trial court misconceived the legal effect and actual intent of the transaction, and that the legal effect of the arrangement under which the "participating operation certificate" holders came into the transaction constituted them stockholders, profit sharers, and coadventurers;—not money loaners, secured by a mortgage. In support of this contention, appellant cites *In re Hawkeye Oil Co.* (D. C.) 19 Fed. (2d) 151, and *United States & Mexico Oil Co. v. Keystone Auto Gas & Light Co.* (D. C.) 19 Fed. (2d) 623.

In the former case, while the certificates were secured by a mortgage, it contained no unconditional promise to pay. Payment was to be made only from a fund arising from the operation of the company. In the opinion it is pointed out that no definite time was fixed in the certificates within which the money was to be repaid. The absence of such provision is relied upon by the court as evidence that the certificates were not given for absolute debts. There being no absolute obligation on the part of the issuing company to repay, the

court held that the status of the certificate holders was not changed by the fact that a mortgage had been given to secure such certificates. The court held both the certificates and the mortgages were null and void. The certificate holders in that case were not creditors, because there was no unconditional promise on the part of the issuing company to pay. The certificate holder had to look to a fund arising from the operation of the company for the payment of his obligation.

In the latter case, the certificate is identical in language; the certificates were not secured by a mortgage or otherwise. The court in its opinion mentions the fact that the certificates contained no general promise to pay any sum; the issuing corporation undertaking only to distribute a certain part of the money taken in by the company from the sale of gasoline and other merchandise, until the full sum of $500 had been distributed to each certificate holder.

In the instant case, there is a definite promise to pay within a definite period. In the two cases cited by appellant, in which the court held that the certificate holders were coadventurers, it is apparent that the conclusions there reached were based solely upon the fact that the certificate holders could look for their money only from the continued operation and success of the business; that there was no absolute obligation on the part of the issuing company to repay the money in any event.

"If money which a person loans to another to be used in a business enterprise is to be repaid by the borrower, whether the venture proves a success or a failure, the contract is ordinarily construed to be one of lending and borrowing and not of joint adventure, and the lender acquires no equitable interest in the property in which the money is invested, nor liability to a third person for debts contracted by the borrower, even though under the agreement he is to share in the profits of the enterprise." 33 C. J. p. 842, § 4.

The certificates, in the instant case, contain this language:

". . . Which sum [$300] the company guarantees shall be paid on or before ten (10) years from the date hereof."

In *Drovers' Deposit Nat. Bank v. Tichenor,* 156 Wis. 251, 255, 145 N. W. 777, the court said:

"While the word 'guaranty' ordinarily means an undertaking to answer for the debt or the performance of a duty by another in case such other fails to pay or perform, colloquially it is frequently used in reference to an original undertaking. The cases recognize the fact that the word is often used as a synonym for 'promise,' and to denote an absolute agreement."

In Fletcher, Cyc. Corp. (perm. ed.) p. 718, § 5294, the author states:

"Whether or not the holder of a particular instrument or certificate is to be regarded as a stockholder or a creditor is a question of interpretation, and depends upon the terms of his contract as evidenced by such instrument and the corporate charter and the statutes of the state. The nature of the transaction is to be determined by the real substance and effect of the contract rather than by the name given to the obligation, or its form. . . . It has been said that the most important inquiries are 'whether a date is fixed within which the company is bound to pay the preferred shares, for all true debts must fall due sometime.' "

In *Koeppler v. Crocker Chair Co.* 200 Wis. 476, 479, 228 N. W. 130, 131, the court said:

"The next question for consideration in orderly procedure is whether the defendant's certificates were evidences of indebtedness, as if they are the plaintiff is a creditor and entitled to recover. The plaintiff is either a stockholder or a creditor. He cannot be both. Designating securities as preferred stock does not determine their real nature. If the circumstances of their issue and their purpose and the articles pursuant to which they were issued show that the transaction was a loan, calling them preferred stock does not change them."

No claim is made here that the Sterling Oil Company ever denied or questioned its obligation to pay each of the participating certificate holders the sum of $300 within ten years

from date of certificate, or that it was indebted to each of said certificate holders in the sum of $131 at the time it suspended business. There is undisputed testimony that in April, 1929, on the occasion of making an agreement to execute a mortgage to Mid-Continent Petroleum Corporation, it was specifically stated that such mortgage "shall be subject only to the existing trust deeds now outstanding upon said property given to secure its so-called certificate holders, and subject only to such other mortgages as are now actually outstanding and recorded upon said property."

When the appellant purchased the real estate in question from the trustee in bankruptcy it took title "subject to all legal liens and encumbrances."

Upon the undisputed facts in this case there is no basis for a claim of fraud upon the creditors of the Sterling Oil Company. There was no deception; no false statement as to capital setup. The contents of the documents are clear and unambiguous. The trust deed was recorded in the office of the register of deeds. The Sterling Oil Company dealt with its creditors upon the assumption that the trust deed was a valid obligation, and its creditors so recognized it.

We must hold that the relationship between the Sterling Oil Company and the participating-certificate holders, as disclosed by the testimony, is that of debtor and creditor, and that the certificate holders are entitled to the security afforded by the trust deed being foreclosed in this action. Other questions have been argued and are discussed in the briefs of counsel. We do not deem it necessary to consider further questions raised, except as to certain items in the taxation of costs. Some of the certificate holders appeared at the trial and testified on behalf of the plaintiff trustee. They are certainly parties in interest. The action by the trustee is brought in a representative capacity for and on behalf of the certificate holders. It may be said that in a representative capacity they were parties to the action. We are of the

opinion that the judgment must be modified by striking therefrom the item of witness fees, taxed in the sum of $25.20. *The Philadelphia* (D. C.), 163 Fed. 438, and cases cited. In all other respects, the judgment must be affirmed.

*By the Court.*—Judgment modified as indicated in the opinion, and, as so modified, affirmed.

A motion for a rehearing was denied, with $25 costs, on December 7, 1937.