JOHNSON, Appellant, vs. BRADLEY KNITTING COMPANY and others, Respondents.

*April 12—September 13, 1938.*

570

For the appellant there were briefs by *Poss, Toelle & Schuler,* attorneys, and *Benjamin Poss* and *Joseph P. Brazy* of counsel, all of Milwaukee, and oral argument by *Mr. Brazy* and *Mr. Poss.*

For the respondents there were briefs by *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and oral argument by *Otto A. Oestreich.*

The following opinion was filed June 25, 1938:

MARTIN, J. The appellant contends that the court erred:

(1) In holding that our statutes permit a corporation to amend its articles as indicated in the foregoing statement of facts against his objections.

(2) In holding that the matter of wiping out accrued dividends on the first preferred stock was not before the court in the present action.

(3) In holding that the plaintiff has not suffered and will not suffer sufficient injury from the changes to entitle him to injunctive relief.

The principal contentions relate to the corporate power to amend the articles of incorporation in the manner indicated against plaintiff's objections. The appellant argues that the only legislation applicable, which is designed to and permits a modification of stockholders' rights without regard to the wishes of the minority, is section 77B of the Federal Bankruptcy Act (11 USCA, § 207).

However, appellant concedes:

"If, by charter or statutory provision in force at the time of the issuance of stock, the right to make designated changes is reserved, the stockholder, of course, consents in advance to the making of such changes. An agreement to be bound by the changes is a part of his contract and an exercise of the right by the state or by a prescribed majority to whom the power may be delegated is neither an impairment nor a breach of the contract."

In this connection appellant contends that general or blanket language in a statute or charter authorizing amendment of the articles upon a vote of the prescribed majority will not be construed as relating to changes which impair contractual obligations or otherwise take away vested rights of the stockholders.

These contentions require a construction of the statutes involved which are sec. 180.07 (1) and sec. 182.13. They provide as follows:

"Sec. 180.07 (1) Any corporation organized for any of the purposes authorized by this chapter, may, by a vote of two thirds of all the stock outstanding, and entitled to vote, . . . amend its articles so as to modify or enlarge its business or purposes, change its name or location, increase or diminish its capital stock, change its officers or its directors, or provide anything which might have been originally provided in such articles. . . ."

"Sec. 182.13 (1) Any corporation may, in its original articles, or by amendment thereto adopted by a three-fourths vote of the stock, provide for preferred stock; for the payment of dividends thereon at a specified rate before dividends are paid upon the common stock; for the accumulation of such dividends; for a preference of such preferred stock not exceeding the par value thereof, over the common stock in the distribution of the corporate assets other than profits; for the redemption of such preferred stock, and for denying or restricting the voting power of such preferred stock.

"(2) Certificates of preferred stock and common stock shall state, on the face thereof, or on the reverse side of such certificates with an appropriate reference thereto on the face thereof, all privileges accorded to and all restrictions imposed on preferred stock.

"(3) No change in relation to such preferred stock shall be made, except by amendment to the articles adopted by a vote of three fourths of the preferred and three fourths of the common stock.

"(4) The articles may be amended by a three-fourths vote of the common stock to provide for a second issue of preferred stock, subject to all the rights and equities of the first issue of preferred stock, and the certificates of such second issue shall have plainly printed across the face the words, 'Preferred Stock, Second Issue,' and shall recite all the terms, restrictions and regulations provided in the articles in relation to such second issue of preferred stock."

These statutes are as effectively a part of the plaintiff's certificates of stock and of the corporate charter as though printed therein. *Wandersee v. Industrial Comm.* 198 Wis. 345, 347, 348, 223 N. W. 837; *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 115, 170 N. W. 275, 171 N. W. 935; *C. H. Venner Co. v. United States Steel Corp.* (C. C.) 116 Fed. 1012; *In re Interborough Consolidated Corp.* (D. C.) 277 Fed. 455. In *Venner Co. v. United States Steel Co., supra,* the court said (p. 1013):

"There was no express provision when the corporation was formed that bonds might be issued to retire stock, in-

stead of purchasing it for cash. But the New Jersey act concerning corporations contains the provision so frequently found in constitutions and statutes, that 'the charter of every corporation shall be subject to alteration, suspension and repeal, in the discretion of the legislature.' This reservation of the right to alter a charter is as much a part of the contract entered into by the stockholders when they subscribe or buy into the corporation as is the most minute provision as to some detail of organization, specifically expressed."

In *In re Interborough Consolidated Corp., supra,* the court said (p. 457) :

"In the case at bar, claimant acquired her stock after the statute authorizing consolidation of corporations had been enacted. She thus held her stock with the advantages and the burdens of the statute, and the statute was read into the contract between her and the corporation."

In the instant case, at the time plaintiff purchased his stock from the defendant company, the right to amend the articles of incorporation was reserved both by the articles of organization and the statutes above quoted, a method of amendment being provided by both. The statute provides (sec. 180.07 (1)) : "The amendment shall be adopted only in accordance with the articles, if a mode of amending the same shall have been therein prescribed."

The articles do provide that they "might be amended by a resolution adopted at any meeting of the stockholders by a vote of at least two thirds of all the stock then outstanding." However, where there is preferred stock, the statute (sec. 182.13 (1)) requires a three-fourths vote to amend its articles affecting the preferred stock. Prior to 1913 the statute, sec. 1759a, Stats. 1911, required a unanimous vote of the stockholders to amend the articles as to preferred stock. By ch. 533, Laws of 1913, sec. 1759a was amended so as to require only a three-fourths vote.

The precise question presented in this appeal has never been squarely passed upon by the court. In *Martin Orchard Co. v. Fruit Growers C. Co.* 203 Wis. 97, 233 N. W. 603, the contention was made that sec. 180.07 (1), Stats., changed the common-law rule. The court did not pass upon the question. It said (p. 103):

"Since the application of the common-law rule above stated to the facts of this case compels a conclusion favorable to the defendants, we have not found it necessary to pass upon, and do not pass upon, the effect of this section." [Sec. 180.07 (1), Stats.]

It is said in *Martin Orchard Co. v. Fruit Growers C. Co.*, *supra*, and in *State ex rel. Cleary v. Hopkins Street B. & L. Asso.* 217 Wis. 179, 190, 257 N. W. 684, that:

"A fundamental and radical change in the purpose of a corporation cannot be accomplished by an act of the corporation over the dissent of a single stockholder."

And in *Koeppler v. Crocker Chair Co.* 200 Wis. 476, 479, 228 N. W. 130, the court said:

"It is contended by the defendant that under the articles of incorporation as amended in 1924 after plaintiff's certificates were issued to him, the preferred stock of the corporation became payable only at call of the defendant and that by such amendment the plaintiff was deprived of whatever right he would otherwise have to recover on his certificate. It seems plain, however, that the defendant could not affect plaintiff's right by any action it or its stockholders might take without his consent or participation."

Sec. 1, art. XI, Const., provides:

"Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation cannot be attained under general laws. All general laws or special acts enacted under the provisions of this

section may be altered or repealed by the legislature at any time after their passage."

If these statutory provisions in effect at the time plaintiff acquired his stock are deemed to be conditions of the stock certificates and of the corporate charter, then the plaintiff consents in advance to the making of such changes as the statutes permit, and an exercise of the right by the state or by a prescribed majority to whom the power may be delegated is neither an impairment nor a breach of the contract. While our statutes quoted are in derogation of the common law, and must therefore be strictly construed, their provisions are unambiguous. By sec. 180.07 (1), Stats., the corporation may by a two-thirds vote of all stock outstanding amend its articles so as to modify or .enlarge its business or purposes, change its name or location, increase or diminish its capital stock, change its officers or its directors, *or provide anything which might have been originally provided in such articles.* Clearly, this permits the increase from twenty thousand shares to fifty thousand shares of nopar common stock. By sec. 182.13 (1) any corporation may, in its original articles or by amendment thereto adopted by a three-fourths vote of the stock, provide for preferred stock; for the payment of dividends thereon at a specified rate before dividends are paid upon the common stock; for the accumulation of such dividends; for a preference of such preferred stock not exceeding the par value thereof, over the common stock in the distribution of the corporate assets other than profits; for the redemption of such preferred stock, and for denying or restricting the voting power of such preferred stock; and by sub. (3) of said section, it is provided that:

"No change in relation to such preferred stock shall be made, except by amendment to the articles adopted by a vote of three fourths of the preferred and three fourths of the common stock."

In the instant case, all the amendments were adopted by more than a three-fourths vote. In fact, there were only two dissenting stockholders. To ascertain the corporate powers to make the amendments under consideration, sec. 180.07 (1) and sec. 182.13, Stats., must be construed together. The legislature has set no limit upon the power to make amendments other than the required vote of three fourths of the common stock and three fourths of the preferred stock theretofore authorized and outstanding. It is apparent that when the legislature in 1913 changed the required vote from one hundred per cent to seventy-five per cent in order to adopt such amendments, it considered the seventy-five per cent vote adequate protection to minority stockholders.

The *Koeppler v. Crocker Chair Co. Case, supra,* can be distinguished from the instant case in that there, after the plaintiff had acquired his stock which contained a fixed maturity date, the articles of incorporation were amended making the certificates payable only at call. The articles provided that the preferred stock, or any part thereof, might be redeemed by order of the directors. Upon the three certificates issued to the plaintiff, the following was indorsed:

"This certificate shall be redeemed on December 20, 1925.
"CROCKER CHAIR COMPANY,
"W. E. Crocker, Secretary."

A like indorsement was made upon the other two certificates except the redemption date thereof was on December 20, 1926. The preferred stock had no definite maturity date in the absence of the indorsement. The trial court held that plaintiff was entitled to recover the face value of his certificates with interest from the maturity date fixed by the indorsement. This court approved the principle, the judgment being reversed on other grounds. The problem in the *Crocker Case* was quite different from that involved here. The court there was dealing with a contract indorsed upon

certain certificates of preferred stock. The effect of this indorsement was to fix a redemption date for the particular certificate upon which the indorsement was placed. This created an apparently hybrid form of security having some of the attributes of preferred stock and also some indications of a debtor-creditor relationship. The court held:

(1) That the character of the security as preferred stock was not impaired by the indorsement.

(2) That a contract establishing a special redemption date for a particular certificate could validly be made between the stockholder and corporation (assuming that the rights of creditors were not affected).

(3) That rights created by this contract could not be modified by an amendment unless consented to by the stockholder involved.

The concurring opinion took the view that "agreements embodied in preferred stock certificates to retire the stock at a given time" were void as against public policy. The effect of the decision is to hold that a special contract with respect to a particular certificate of preferred stock and providing for its redemption at a particular date could validly be made without impairing its standing as preferred stock; that once made it could neither be destroyed nor modified by the process of ordinary amendment over the objection of the stockholder with whom it is made, being open to attack solely by creditors whose rights to the assets of a corporation may not be impaired by an agreement putting stockholders in a position of equality or superiority with respect to them.

In the case at bar, the incidents of the preferred stock changed by amendment were not special contracts with reference to special certificates but the ordinary preferences provided by the articles and authorized by sec. 182.13, Stats.

In the *Martin Orchard Co. Case,* the proposed amendment conferred additional power upon the corporation to borrow money through mortgaging its assets, for an expan-

sion of the business. This court held that the amendment was proper under the applicable rules of the common law.

In *State ex rel. Cleary v. Hopkins Street B. & L. Asso., supra,* the building and loan association, which was organized under the laws of Wisconsin, undertook to abandon its charter and reorganize under the federal law. This court held such change could not be made. Clearly, those cases present an entirely different factual situation and are distinguishable from the instant case.

Counsel have cited many cases relating to corporate amendments under general common-law rules; also cases where the amendments were made under statutory provisions. In the latter class, the decisions are based upon statutory construction and are not particularly helpful because of the difference in the statutory law of the different jurisdictions. So in the instant case, the question is: To what amendments did the plaintiff consent at the time he became a stockholder in the defendant company? To the extent of such consent he is bound and cannot assert an impairment nor a breach of alleged contractual rights. The corporate power to make amendments under the statutes quoted is very broad. If section 77B of the Federal Bankruptcy Act is the only means which permits a modification of stockholders' rights without regard to the wishes of the minority, then corporate control under our statutes is in a hazardous position. In this day and age of corporate activity, it would be a serious matter to hold that one per cent of the stockholders of a corporation could defeat the will of the other ninety-nine per cent. Under sec. 180.07 (1), Stats., a corporation may amend its articles of organization in any respect which might have been originally provided in its articles, subject, of course, to the required statutory vote, and in corporations having preferred stock, no change in relation to such preferred stock shall be made except by amendment

to the articles, adopted by a three-fourths vote of both the common and preferred stock outstanding. The proposed amendments in the instant case were adopted by the required statutory vote. We must hold the amendments valid and binding upon the plaintiff who consented thereto in advance when he became a member and stockholder of the defendant company.

"It is also the law that the majority, even with respect to operations within the powers of the corporation, cannot fraudulently or dishonestly conspire to turn over to themselves corporate property or advantages to the detriment of the corporation itself or a minority of its stockholders. 'But where the act of either such body, though lawful in itself, is designed to accomplish some illegitimate object,— the mainspring of the transaction is some ulterior motive,— and the result, if permitted to operate, will be injurious to the corporation or members not concerned in the transaction, such a member may successfully invoke equity jurisdiction for protection of the corporation where the proper officers will not do it.' *Theis v. Durr,* 125 Wis. 651, 104 N. W. 985. It is also the law, assuming the corporation to have the power, that the majority, 'as to authority lodged with them, and the board of directors in the field where that is the governing body, are supreme within the limits of honest administration and of the boundaries of discretion.' *Theis v. Durr, supra." Martin Orchard Co. v. Fruit Growers C. Co., supra,* p. 103.

It is elementary law that legal power cannot be used to effectuate a fraudulent purpose. This rule has no application in the instant case since no fraud is alleged or proved.

Appellant makes the further contention that if the statutes be construed so as to permit the amendments indicated, such changes can be made only in the interest of the corporation and not in the interest of one class of stockholders as against another class, and that the amendments in question are not in the interest of the corporation. Whether the

amendments are in the interest of the corporation would seem to be committed to the judgment of the stockholders. The statute specifies the affirmative vote required to adopt an amendment. It appears that a committee of the stockholders, representing all classes of stock, gave long and careful study as to the advisability of adopting such amendments and as to the benefits which would accrue to the corporation by their adoption. It is obvious that a substantial financial gain would result by eliminating some of the tax burden which now exists because of the requirement that the company maintain at all times net quick assets equal to one hundred twenty per cent of the par value of the outstanding first preferred stock, also in the matter of the reduction as to dividends accruing in the future. It is hardly conceivable that out of a large number of stockholders, the amendments would have been adopted with only two dissents unless they were considered to be in the interest of the corporation.

We have the further question as to the accrued dividends at the time the challenged amendments were made. As of that time, dividends had accrued on the first preferred stock to the amount of $35 per share. Plaintiff was the owner of eighty-six shares of such stock. It appears that in connection with the amendment to Article Third of the articles of organization, a resolution was adopted, authorizing and directing the board of directors to declare and pay a dividend of $20 on each share of the first preferred stock. It further provided that said dividend be paid in convertible dividend warrants of the company, maturing on December 1, 1946, being convertible at any time until maturity or until called, into common stock of the company in the ratio of one and one-quarter shares of said common stock for each $20 of par value of said warrants, said dividend to be paid to and accepted by the holders of the first preferred stock in full settlement and discharge of all dividends per share, accrued and accumulated, on the first preferred stock, up to

and including December 1, 1936. It is true that the acceptance of such dividend warrants was optional. Nevertheless, the dividends had accrued and the board of directors was authorized and directed to declare a dividend of $20 on each share of the first preferred stock. The resolution directed the payment in a manner other than cash. Plaintiff insists upon a cash payment. The respondents, while insisting that the issue is not before the court in the present action, apparently concede plaintiff's right to insist upon his dividend being paid in cash. We are of the opinion that the issue was properly before the court. The complaint refers to the accumulated dividends and asks that the issuance of convertible dividend warrants be restrained. Although this action is one in equity, it is our conclusion that plaintiff should have been granted a money judgment in the sum of $1,720. That is upon the basis of $20 per share on his eighty-six shares of first preferred stock. The equitable relief prayed for was properly denied.

The conclusion reached requires that the judgment be modified so as to give plaintiff a money judgment in the sum stated. The judgment, so far as it denies plaintiff equitable relief, will be affirmed. The respondent will have costs.

*By the Court.*—Judgment modified in accordance with this opinion and as modified it is affirmed, respondent to have costs.

FOWLER, J. (*dissenting*). It was held in *Koeppler v. Crocker Chair Co.* 200 Wis. 476, 228 N. W. 130, that a corporation cannot affect a stockholder's right to recover according to the terms of his preferred stock certificate by any action of the corporation or its stockholders taken after its issue without his consent.

The terms of the stock certificate of the plaintiff in that case gave him the right to have his preferred stock redeemed at a fixed date. This provision was authorized by the corpo-

rate articles at the time the certificate was issued. After its issue the stockholders by a majority sufficient under sec. 182.13 (3), Stats., changed the articles to substitute for the fixed time provided for redemption a provision for redemption upon call of the corporation. We held that this could not be done. The situation was precisely the same as the instant situation. The changes by amendment in the two cases are different, but they are of like nature in that they change the contract rights of stockholders and the manner in which they were effected is the same, and the holding of the *Koeppler Case* was that such a change cannot be made in that manner. It is true that in the opinion in the *Koeppler Case* there is no particular discussion of the rule stated, but the statute was in mind when the decision was rendered. The statement of facts preceding the opinion so shows, page 478, where it is said: "Before any of the [plaintiff's] certificates became due, a sufficient majority of the holders of both common and preferred stock voted to amend the articles of incorporation" to effect the change above stated. The holding in the instant case overrules the *Koeppler* decision.

It is true that the court may now, if it considers its former ruling erroneous, correct its error. But was the former ruling erroneous? Under the common law the ruling was correct. "In the absence of such [statutory provisions authorizing] provisions, the general rule of law is that a vital, radical and fundamental amendment of the charter" must receive the consent of all the stockholders. 7 Fletcher, Cyc. Corp. p. 898, § 3726. "The contract between a corporation and the holders of its preferred stock cannot be changed, or their rights in any way impaired, without their consent, by any subsequent action of the corporation." 11 *id.* p. 732, § 5296. This common-law rule is recognized in *Martin Orchard Co. v. Fruit Growers C. Co.* 203 Wis. 97, 233 N. W.

603. That common law may be changed by statute is of course true. But it is an accepted general principle that statutes in derogation of the common law are strictly construed. Fundamental changes in contract rights by amendment of a charter are not authorized by a statute unless such authority is expressly given. Blanket language in a statute does not authorize such changes. These propositions are amply sustained by the following cases cited in appellant's brief: *Sutton v. Globe Knitting Works,* 276 Mich. 200, 267 N. W. 815; *Pronick v. Spirits Distributing Co.* 58 N. J. Eq. 97, 42 Atl. 586: *Yoakam v. Providence Biltmore Hotel Co.* (D. C.) 34 Fed. (2d) 533, 543; *Breslav v. New York & Queens Electric Light & Power Co.* 249 App. Div. 181, 291 N. Y. Supp. 932; *id.* 273 N. Y. 593, 7 N. E. (2d) 708; *McKenzie v. Guaranteed Bond & Mortgage Co.* 168 Ga. 145, 147 S. E. 102.

The statutes relied on to support the changes here involved do not, in my opinion, authorize such changes as were here made. The changes are vital and fundamental. They destroy highly valuable rights. Two statutes are relied on as authorizing the changes. One of them is sec. 180.07 (1), Stats., and the other sec. 182.13, Stats. Sec. 180.07 (1) reads:

"Any corporation organized for any of the purposes authorized by this chapter, may, by a vote of two thirds of all stock outstanding, and entitled to vote, . . . unless a greater vote shall be required in its articles, amend its articles so as to modify or enlarge its business or purposes, change its name or location, increase or diminish its capital stock, change its officers or its directors, or provide anything which might have been originally provided in such articles. . . ."

The language here relied on is the "blanket" language held ineffectual in the cases above cited. Where general lan-

guage follows specific language relating to powers granted
or acts permitted by statute the general rule is that the gen-
eral language only covers powers or acts of the same nature
as those specified. *Chicago & N. W. R. Co. v. Railroad
Comm.* 162 Wis. 91, 155 N. W. 941. See other cases cited
in 5 Callaghan's Wis. Dig. p. 4894, as to *ejusdem generis.*
To give to the blanket provision of the statute the construc-
tion contended for by the respondents renders the inclusion
of the specified things senseless and futile. The amend-
ments specifically authorized by sec. 180.07 (1), Stats.,
cover change of business or purposes, location, increase, or
diminishing of capital stock, and change of officers or direc-
tors. The changes here involved are a far reach from those
specified. They are entirely different in character and effect.
I cannot assent that this statute contemplates any such radi-
cal and fundamental changes in contract rights as are here
involved.

That sec. 180.07, Stats., does not authorize amendment of
corporate articles to provide for issue of preferred stock ap-
pears from the fact that it was considered necessary to make
a special provision for it in the revision of 1898. The for-
mer section was then and had for years been in existence.
The revisors of 1898 provided that preferred stock might
not be issued after organization of a corporation unless all
stockholders consented thereto. Subsequently it was pro-
vided that such amendment might be adopted by a three-
fourths vote. Ch. 324, Laws of 1925. But this amendment
did not authorize any change in articles in respect of pre-
ferred stock that had not theretofore been expressly author-
ized by statute, and no such change had been theretofore, and
none such has been since expressly indicated.

The only provisions of sec. 182.13, Stats., that relate to
changes by amendment are subs. (1), (3), and (4). Sub.
(1) authorizes amendment to provide for preferred stock,

and in relation thereto to provide for payment of dividends thereon at a fixed rate before common stock can receive dividends; for accumulation of dividends; for preference of preferred over common stock in distribution of assets; for the redemption of preferred stock; and for denying or restricting the voting power of preferred stock. That this section does not warrant the amendment here involved is manifest from consideration of the changes made by that amendment. That amendment provides for changes in provisions of the existing preferred stock in six respects, as specifically noted in the opinion of the court. (1) Reduces dividends from seven to five per cent. (2) Changes sinking fund provisions. (3) Reduces quick-asset provision from one hundred twenty to sixty per cent of preferred stock outstanding. (4) Reduces the excess profits that shall be devoted to the sinking fund from three to two per cent. (5) Refers to substitution for unpaid cumulated dividends on preferred stock warrants for $20 for every $35 of such unpaid dividends. (6) Increases nopar common stock from 20,000 to 50,000 without giving holders of existing common stock the right to take new stock in amount sufficient to retain their relative rights incident to stock ownership.

The changes indicated by (2), (3), (4), (5), or (6) above clearly do not fall within the amendments authorized by sub. (1) of sec. 182.13, Stats. There is nothing in that subsection that purports to provide or implies that preferred stockholders may by amendment of articles be compelled to surrender their preferred stock for other preferred stock with provisions less beneficial to them than the provisions of the stock they hold. Sub. (1) only purports to provide for issues of preferred stock in addition to stock already issued. Nothing is said about compelling stockholders to take a new issue of stock in lieu of their holdings of stock already issued.

It does not appear from the printed case or the exhibits referred to therein that the proposed amendment of articles expressly provides for compulsory exchange of old for new certificates of preferred stock. However, it is not apparent how the provisions of subs. (2) and (4) of sec. 182.13, Stats., can be complied with without such exchange. These subsections provide that certificates of preferred stock shall state on their face or contain on their face reference to a statement on their back of "all privileges accorded to and all restrictions imposed" on preferred stock. And it is immaterial whether such exchange is expressly provided for in the amendment or the same effect is produced by mere amendment of the articles without such express provision.

Sub. (3) of sec. 182.13, Stats., is the provision most strongly relied on. It reads:

"No change in relation to such preferred stock shall be made, except by amendment to the articles adopted by a vote of three fourths of the preferred and three fourths of the common stock."

My view of this subsection is that it relates back to sub. (1). It authorizes the changes covered by sub. (1) when three fourths of the stockholders shall so vote, but it goes no further. It does not purport or imply power to do anything except what sub. (1) expressly empowers. It does not therefore authorize what was here done.

Sub. (4) only purports to authorize common stockholders to vote a second issue of preferred stock, provided such issue preserves all rights and equities secured by the first issue. It has no application to the instant situation, except as far as it recognizes that rights and equities of existing holders of preferred stock ought not, as common honesty manifestly requires, to be prejudicially interfered with, and thereby refutes intention of the legislature to authorize such interference. The doctrine adopted by the court in this case

renders all preferences of preferred stock subject to destruction, and renders such stock subject to be placed on absolutely the same status as common. If by a vote of three fourths of the stockholders what was done in this case by amendment can be authorized, anything conceivable can be so accomplished. As well, in principle, may cancellation of preferred stock be authorized as destruction of the rights and privileges inherent in it by the terms of the certificates representing it. The legislature could not have intended any such destruction of contract rights as is here involved. We should assume an intent of honesty and fair dealing on the part of the legislature, not an intent to authorize plunder when three fourths of the stockholders shall vote for it because they consider that what is to be gained by the plundering of others will be of more advantage to them than what they themselves lose. If three fourths or all but one stockholder desire the change here attempted let them accept it for themselves, but they should in common honesty be held to respect the rights of the stockholders who do not wish to forego their rights. By this it is not meant to imply that there was any intent to defraud in this case. I agree that those voting for the change doubtless considered the change necessary to save the corporation. But those opposing no doubt thought otherwise, and preferred what they had to what was offered in exchange. In my opinion what was here attempted cannot be done under sanction of a statute unless the statute shall expressly or by necessary implication so declare. The facts here involved might well justify the legislature in declaring that when such facts exist the changes here attempted may be made by a three-fourths vote of all stockholders. But the present statutes do not expressly declare, nor do they necessarily or reasonably imply, that such changes in the contract rights of holders of preferred stock as were here attempted were contemplated. It was early

held by this court that the clause of our state constitution reserving the right to change corporate charters after their adoption did not apply to the contract rights of stockholders secured by the corporate charter. *Kenosha, Rockford & Rock Island R. Co. v. Marsh,* 17 Wis. 13, 16, 17. Upon like reason it ought to be held that such changes are not authorized by the statutes here relied upon. The instant sub. (3) by its terms imposes no restrictions or conditions upon which changes by amendment may be made. The implication therefore is, if it is held that amendments outside of those mentioned in sub. (1) may be made at all, that they may be made for slight or whatever reason, or for none at all, or from whatever motive. No such intent of the legislature is expressed nor should such intent be inferred.

For the reasons above stated, the judgment of the circuit court should be reversed and judgment entered in accordance with the prayer of the complaint.

I am authorized to state that Mr. Justice FRITZ and Mr. Justice FAIRCHILD concur in this dissent.

A motion for a rehearing was denied, with $25 costs, on September 13, 1938.